**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Eric Geaslin, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO.: 4:24-cv-02418 |
| v. | |
| Colony Ridge Development, LLC d/b/a Terrenos Santa Fe, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR CLASS CERTIFICATION**
**AND PRELIMINARY APPROVAL OF CLASS SETTLEMENT**

# Table of Contents

Nature and Stage of this Proceeding ............................................................................. 1

Issues to be Ruled on by this Court .............................................................................. 1

Summary of the Settlement............................................................................................ 1

The Telephone Consumer Protection Act..................................................................... 3

Summary of Facts Underlying Plaintiff's Claims......................................................... 4

Summary of the Argument............................................................................................. 5

Argument ........................................................................................................................ 6

    I.    The class meets all requirements for certification under Rule 23.......................... 6

       A.   TCPA claims, like those at issue here, are well-suited for class treatment. .................. 6

       B.   The Settlement Class satisfies the requirements of Rule 23(a)....................................... 6

           1.   The Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable........................................................................................................... 6

           2.   Common questions exist as to each Settlement Class Member................................. 8

           3.   Plaintiff's claims are typical of the claims of Settlement Class Members. ............... 9

           4.   Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class................................................................................................... 10

       C.   The Settlement Class satisfies the requirements of Rule 23(b). ................................... 11

           1.   Questions common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members. ....................................... 11

           2.   A class action is superior to other available methods for the fair and efficient adjudication of this matter. ............................................................................... 13

    II.   The settlement is fair, reasonable, and adequate, under Rule 23(e). ............................... 15

       A.   There was no fraud or collusion behind the settlement. ............................................... 16

       B.   The complexity and expense of future litigation supports preliminary approval. ........ 17

       C.   The stage of the proceedings and the amount of discovery completed. ...................... 18

       D.   The probability of Plaintiff's success on the merits, in light of the range of possible recoveries and uncertainty of damages, supports preliminary approval............................... 19

       E.   The opinions of the class counsel, class representatives, and absent class members support preliminary approval.......................................................................................... 25

       F.   The remaining Rule 23(c)(2) factors support preliminary approval............................. 26

    III.   The notice plan is sufficient. ......................................................................................... 27

    IV.   This Court should set a final fairness hearing................................................................ 29

Conclusion .......................................................................................................................... 29

## Table of Authorities[1]

**Cases**

*Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744 (W.D. Tex. 2011) ................................ 21

*Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559 (W.D. Wash. 2012) ........................................... 6

*Amchem Prod., Inc. v. Windsor*, 521 U.S. 591 (1997).................................................................. 11

*Ayers v. Thompson*, 358 F.3d 356 (5th Cir. 2004) ................................................................. 15, 17

*Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240 (N.D. Ill. 2014) ................................ 9

*Campbell-Ewald Co. v. Gomez*, 577 U.S. 153 (2016) .................................................................... 4

*Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056 (E.D. Cal. 2022) ........................................................................................................................ 21

*Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. 2022) ................................................................................................................................... 18, 19

*Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 111235 (S.D. Tex. June 6, 2025) ........................................................................................................... 25

*Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 35852 (S.D. Tex. Feb. 24, 2025)................................................................................................... passim

*Davis v. Mindshare Ventures LLC*, 2020 U.S. Dist. LEXIS 105994, Civil Action No. 4:19-cv-1961, 2020 U.S. Dist. LEXIS 105994 (S.D. Tex. June 12, 2020) ........................................... 25

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) ..................................................... 19

*DeSouza v. Aerocare Holdings LLC*, No. 6:22-cv-1047-RBD-LHP, 2024 U.S. Dist. LEXIS 52076 (M.D. Fla. 2024) ............................................................................................................ 10

*Duke v. Bank of Am.*, N.A., No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014).............. 24

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)..................................................................... 27

*Ford v. Farha Roofing, LLC*, No. 4:23-00635-CV-W-FJG, 2025 U.S. Dist. LEXIS 144450 (W.D. Mo. July 29, 2025).................................................................................................................... 6

*Gehrich v. Chase Bank United States*, 316 F.R.D. 215 (N.D. Ill. 2016) ........................... 9, 10, 24

*Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318 (5th Cir. 2008).............................................. 11

*Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 6684 (E.D. Mo. Jan. 18, 2017)....................................................................................................................... 9, 12

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .................................................... 12, 20

*Harmon v. Shell Oil Co.*, No. 3:20-cv-00021, 2023 U.S. Dist. LEXIS 157163 (S.D. Tex. Sep. 6, 2023) ........................................................................................................................................... 7

*Horton v. Multiplan Inc.*, No. 3:23-cv-02098-S-BT, 2024 U.S. Dist. LEXIS 123050 (N.D. Tex. June 7, 2024)................................................................................................................................ 4

*Hung V. Vu, D.D.S. v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639 (C.D. Cal. 2022)............................................................................................................ 21

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) .............. 24

---

[1] Per this Court's procedures and preferences, all unpublished cases and relevant excerpts of treatises have been compiled for this Court's review. *See* Appendix B.

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456 (E.D. La. 2020) 15

*In re Concho Res., Inc. Sec. Litig.*, No. 4:21-cv-2473, 2025 U.S. Dist. LEXIS 66272 (S.D. Tex. Apr. 7, 2025) ................................................................................................................. 7

*In re Deepwater Horizon*, 739 F.3d 790 (5th Cir. 2014) ................................................. 8

*In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541 (S.D. Tex. 2005) ............. 8

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) ........................................................................................... 17

In re Wells Fargo Loan Processor Overtime Pay Litig., 2011 U.S. Dist. LEXIS 84541 (N.D. Cal. 2011) ........................................................................................................................ 23

*In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922 (8th Cir. 2005) ..................... 20

*Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682 (7th Cir. 2013) ........................... 6

*James v. City of Dall.*, 254 F.3d 551 (5th Cir. 2001) ....................................................... 9, 10

*James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 U.S. Dist. LEXIS 167022 (M.D. Fla. Nov. 22, 2016) ............................................................................. 14, 23

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ............................... 17

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ................................................................... 17

*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981) ................................. 16

*Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238 (D. Ariz. 2019) .................................... 13

*Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 U.S. Dist. LEXIS 94055 (D.N.M. 2018) ............................................................................................... 14

*Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017) 23

*Mabary v. Hometown Bank*, N.A., No. 4:10-cv-3936, 2011 U.S. Dist. LEXIS 134437 (S.D. Tex. 2011) ........................................................................................................................ 10

*Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731 (S.D. Cal. 2013) ........................................................................................... 12

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2016 U.S. Dist. LEXIS 123541 (N.D. Ga. Sept. 7, 2016) ................................................................................................................... 24

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017) ................................................................................................................. 25

*Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 U.S. Dist. LEXIS 188999 (N.D. Cal. Aug. 22, 2016) ......................................................................................................... 9

*Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 U.S. Dist. LEXIS 23103 (E.D. Mo. Feb. 7, 2023) .............................................................................................................. 23, 24

*Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301 (S.D. Fla. 2017) ............................... 6

*Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620 (5th Cir. 1999) ............................... 7

*Odonnell v. Harris Cty., Tex.*, No. H-16-1414, 2019 U.S. Dist. LEXIS 202474 (S.D. Tex. 2019) ..................................................................................................... 16, 17, 19, 25

*Palm Beach Golf Center-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ................. 12

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ............. 10, 14, 25

*Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302 (S.D. Tex. 2024) ................................. 8

*PeJ.A.V. v. Trump*, 349 F.R.D. 152 (S.D. Tex. 2025) ..................................................... 7

iv

*Phillips v. Joint Legis. Comm. on Performance & Expenditure Review*, 637 F.2d 1014 (5th Cir. 1981) ................................................................................................................. 7

*Picchi v. World Fin. Network Bank*, No. 11-61797 (S.D. Fla. Jan. 30, 2015) ............................ 24

*Prather v. Wells Fargo Bank, N.A.*, No. 15-4231, 2017 WL 770132 (N.D. Ga. Feb. 24, 2017).. 23

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ...................................... 15, 19

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ................................................................................................. 24

*Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155 (N.D. Tex. 2024) ......................................... 8

*Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, 2017 U.S. Dist. LEXIS 42394 (S.D. Miss. Mar. 23, 2017) ......................................................... 19

*Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389 (N.D. Ohio 2012) ....................................... 6

*St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975 (E.D. Mo. 2013) ................................................................. 12

*Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855 (N.D. Cal. Mar. 31, 2014) ................................................................................................ 24

*Thieroff v. Marine Spill Response Corp.*, No. CV 21-6075-GW-MRWx, 2024 U.S. Dist. LEXIS 72068 (C.D. Cal. 2024) .................................................................................. 23

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ...................... 16, 18

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ......................................................... 22, 25

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011) ....................................................... 8

*Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404 (N.D. Miss. 2000) ......................... 8

*Watson v. Manhattan Luxury Autos., Inc.*, 2025 U.S. Dist. LEXIS 13042 (S.D.N.Y. 2025) ....... 21

*Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ..................................................................................................... 24

*Williams v. Bluestem Brands, Inc.*, No. 171971, 2019 U.S. Dist. LEXIS 56655 (M.D. Fla. Apr. 2, 2019) ......................................................................................................... 23

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ................................................................................................. 24

**Statutes**

47 C.F.R. § 64.1200 ............................................................................................... 3

47 U.S.C. § 227 ........................................................................................... 1, 20

**Other Authorities**

Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966) ...................................... 12

**Rules**

Fed. R. Civ. P. 23 ................................................................................... passim

**Treatises**

1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992) ........................................... 7

Manual For Complex Litigation § 21.632 (4th ed. 2004) ...................................... 15, 29

### Nature and Stage of this Proceeding

Eric Geaslin ("Plaintiff") filed this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of himself and a nationwide class, alleging that Colony Ridge Development, LLC d/b/a Terrenos Santa Fe ("Defendant") delivered telemarking text messages to the cellular telephone numbers of Plaintiff and similarly situated individuals promoting Defendant's business, despite never receiving prior express written consent, and despite their status on the National Do-Not-Call Registry ("DNC Registry"). Following over a year of vigorously contested litigation, and after extensive arm's-length negotiations before experienced mediator Seamus Duffy, Plaintiff and Defendant reached an agreement to resolve this matter.[2]

### Issues to be Ruled on by this Court

Whether this Court should grant Plaintiff's unopposed request to: (1) certify the settlement class for settlement purposes; (2) preliminarily approve the settlement as fair, reasonable, and adequate; (3) appoint Plaintiff as the class representative and Plaintiff's counsel as class counsel; (4) approve and direct notice to class members; and (5) set a final fairness hearing date.

### Summary of the Settlement

The parties agreed to resolve this matter on behalf of the following Settlement Class:

> All persons throughout the United States (1) to whom Colony Ridge Development, LLC d/b/a Terrenos Santa Fe delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Colony Ridge Development, LLC d/b/a Terrenos Santa Fe's or its business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Colony Ridge Development, LLC d/b/a Terrenos Santa Fe delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) whose residential telephone numbers are included in the Settlement Class Data, (4) between June 27, 2020 and May 7, 2025.

---

[2]     The settlement agreement ("Agreement") and its exhibits—a proposed: (1) long-form notice; (2) postcard notice; (3) claim form; (4) preliminary approval order; and (5) final approval order—are appended to the Declaration of Bryan A. Giribaldo (Exhibit A). *See* Appendix A. Unless otherwise indicated, this Motion incorporates the defined terms in the Agreement.

Agreement at §I.HH. To compensate Settlement Class Members, Defendant will pay a Settlement Amount of $1,994,123.00 into a non-reversionary Settlement Fund.[3] *Id.* at §§ I.GG, I.LL. Paid from the Settlement Fund will be: (1) compensation to Settlement Class Members; (2) court-approved Notice and Administrative Costs; (3) court-approved Attorneys' Fees and Expenses, for which Plaintiff's counsel will separately petition this Court; and (4) a Service Award to Plaintiff, not to exceed $12,000.00, for which Plaintiff's counsel will separately petition this Court. *Id.* at §§ I.LL, II.D.

Pursuant to the Agreement, a third-party Administrator will mail Class Notice directly to Settlement Class Members, together will a detachable Claim Form that Settlement Class Members can use to submit claims. *Id.* at §§ III.A-B. The Administrator will also establish a Settlement Website that provides information about the settlement, and through which Settlement Class Members can submit Claim Forms electronically. *Id.* at § III.B.5. Also, the Administrator will set up a toll-free telephone number that provides information about the settlement. *Id.* at § III.B.6.

Each Settlement Class Member who submits a timely, valid and complete Claim Form by the Claim Deadline shall be a Claimant, and will be sent a Claim Settlement Check for a *pro rata* portion of the Settlement Fund, after deducting all Notice and Administration Costs, any approved Attorneys' Fees and Expenses subject to this Court's approval, and any approved Service Award,

---

[3]    As a result of mediation, the parties agreed to settle this matter for a sum of $2,000,000.00 based on a representative sample of class data, while acknowledging that confirmatory discovery would be needed to identify all potential class members and convert the sampled data into the necessary data to effectuate this settlement. As part of that confirmatory discovery, Defendant needed to pay a third-party vendor to collect data from the dozens of cellular telephones used by Defendant to deliver the communications at-issue, and the parties agreed at mediation to deduct those third-party expenses from the final settlement sum. Defendant paid $5,877.00 to that vendor, and so that sum was deducted from the initially-agreed $2,000,000.00 settlement sum.

subject to this Court's approval. *Id.* at § III.B.2.

Any Settlement Class Member who properly opts out of the Settlement Class can exclude themselves from the Settlement and would not release any of their Released Claims. *Id.* at § III.D. Likewise, any Settlement Class Member who does not opt out of the Settlement may object to the Settlement by submitting an objection to the Administrator by the Objection Deadline. *Id.* at § III.E. Upon this Court's entry of the Final Approval Order, non-excluded Settlement Class Members will release and forever discharge the Released Claims.[4] *Id.* at § IV.A.

### The Telephone Consumer Protection Act

The TCPA makes it unlawful to "[i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express *written* consent of the called party[.]"[5] 47 C.F.R. § 64.1200(a)(2). "Prior express written consent," in turn, is defined as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

---

[4]     "Released Claims" is defined to include all claims that arise out of, concern or relate to the TCPA and/or any other related federal or state laws regarding telemarketing of any kind and/or the use of a telephone dialing system to make calls or send text messages and which arise from calls made or text messages sent by or on behalf of Defendant to Settlement Class Members related in any way to Defendant or their business partners' goods or services, from any time prior to May 7, 2025. *Id.* at § I.BB.

[5]     Unless otherwise indicated, all emphasis is added, and all internal citations and quotations are omitted.

Additionally, pursuant to 47 C.F.R. § 64.1200(d)(4), "[a] person or entity making a call for telemarketing purposes must provide the called party with the name of the individual caller, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which the person or entity may be contacted." Lastly, given the facts underlying this matter, a text message is a "call" as defined by the TCPA. *See Horton v. Multiplan Inc.*, No. 3:23-cv-02098-S-BT, 2024 U.S. Dist. LEXIS 123050, at *12 (N.D. Tex. June 7, 2024) ("A text message to a cellular telephone qualifies as a call under Section 227 of the TCPA.") (citing *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 156 (2016)).

### Summary of Facts Underlying Plaintiff's Claims

Beginning in late 2022, Plaintiff received a series of text messages to his cellular telephone number from various telephone numbers advertising various real estate offerings in Spanish. *See* ECF No. 1 at ¶¶ 14, 16-17, 22. Plaintiff's telephone number is, and has been at all relevant times, registered to the DNC Registry, since he registered it on December 5, 2019. *Id.* at ¶ 13. Critical to Plaintiff's claims, Plaintiff did not recognize Defendant, did not make any inquiries to Defendant, and did not provide Defendant written consent to deliver advertising or marketing text messages to his cellular telephone number. *Id.* at ¶¶ 18-21, 24.

And Plaintiff is not alone in his experience with Defendant. Indeed, Defendant delivered or attempted to deliver text messages—similar to the text messages Plaintiff received—to approximately 71,700 telephone numbers during the Class Period. Agreement at §I.HH. Of those approximately 71,700 telephone numbers, Plaintiff believes—and Defendant does not contest for the purposes of this motion—approximately 10,750 of those telephone numbers are residential cellular telephone numbers registered on the DNC Registry. *See* Exhibit A at ¶ 39. This number is based on the percentage of telephone numbers on the DNC Registry (15%) applicable to a sampling of telephone number data produced by Defendant through discovery. *See id.* at ¶¶ 28-30.

The precise number of telephone numbers on the DNC Registry will be ascertained by the Administrator.

## Summary of the Argument

All elements of Fed. R. Civ. P. 23(a), (b)(3) and (e) are readily satisfied. Numerosity is satisfied under Rule 23(a)(1) as the proposed settlement class consists of thousands of class members. Commonality is satisfied as there are common issues of fact and law among the class members, such as whether Defendant sent the text messages at issue, if these text messages constitute telephone solicitations, if Plaintiff is entitled to damages, the amount of damages, and if Plaintiff is entitled to injunctive relief. Similarly, typicality is satisfied as Plaintiff received the same type of text message that each class member did, and was therefore harmed in the same way as each class member. Adequacy requirements are also met as Plaintiff is capable of protecting, has protected, and will continue to protect, the interests of absent class members, retaining counsel experienced and competent in class action litigation, including that under the TCPA. Rule 23(b) requirements, commonly referred to as predominance and superiority, are clearly met as the common questions here present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, and the proposed class settlement here is superior to adjudicating or joining thousands of class members' respective claims for relief.

Furthermore, the proposed Settlement is fair, adequate, and is an excellent result for the Settlement Class, warranting court approval under Rule 23(e). Analyzing the six *Reed* factors favors approval of the proposed Settlement Class as the Agreement: (1) constitutes an excellent result of an arms-length settlement of disputed claims before an experienced mediator; (2) avoids the protracted expenses and litigation that inevitably come with class action lawsuits; (3) was reached after the parties were able to weigh the strengths and weaknesses of their positions through discovery; (4) accounted for the uncertainty of a successful outcome at trial or the ultimate

solvency of Defendant should it had been forced to litigate through trial; and (5) comes at the strong recommendation of Plaintiff's counsel, who are experienced in TCPA class actions. Given the above, preliminary approval is warranted.

**Argument**

I. **The class meets all requirements for certification under Rule 23.**

    A. **TCPA claims, like those at issue here, are well-suited for class treatment.**

As Judge Easterbrook wrote: "Class certification is normal in litigation under [the TCPA], because the main questions . . . are common to all recipients." *Ira Holtzman, C.P.A., & Assocs. v. Turza*, 728 F.3d 682, 684 (7th Cir. 2013); *accord Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 35852, at *12-13 (S.D. Tex. Feb. 24, 2025) (collecting cases for the propriety of class certification in the context of TCPA actions). And this remains true in the context of advertisement and text message claims under the TCPA.[6]

    B. **The Settlement Class satisfies the requirements of Rule 23(a).**

For a class to be certified, it must first satisfy all requirements under Rule 23(a), commonly referred to as numerosity, commonality, typicality, and adequacy of representation.

        1. **The Settlement Class is so numerous that joinder of all Settlement Class Members is impracticable.**

---

[6]    *See, e.g.*, *Agne v. Papa John's Int'l, Inc.*, 286 F.R.D. 559, 572 (W.D. Wash. 2012) (certifying a class of "persons in the United States of America who were sent, to their cellular telephone numbers, at least one unsolicited text message that marketed a Papa John's branded product, good, or service through OnTime4U"); *Silbaugh v. Viking Magazine Servs.*, 278 F.R.D. 389, 391 (N.D. Ohio 2012) (certifying a class "consisting of all persons sent Viking texts with an ATDS since February 1, 2011"); *Mohamed v. Am. Motor Co., LLC*, 320 F.R.D. 301, 308 (S.D. Fla. 2017) (certifying a class of "all persons in the United States (i) who received a text message (ii) on his or her cellular telephone (iii) from InstantCarOffer.com for Off Lease Only, Inc. (iv) sent using Instant Car Offer.com's systems (v) from a period of four (4) years prior to the filing of the initial Complaint, September 4, 2011, to the date of class certification"); *Ford v. Farha Roofing, LLC*, No. 4:23-00635-CV-W-FJG, 2025 U.S. Dist. LEXIS 144450 (W.D. Mo. July 29, 2025) (certifying a settlement class, represented by the undersigned, of persons who received "more than one text message" to their telephone number from a roofing company).

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "Any class consisting of more than forty members should raise a presumption that joinder is impracticable." *Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *3; *see also* 1 Newberg, Class Actions § 3.05 at 3-25 (3d ed. 1992); *Mullen v. Treasure Chest Casino, LLC*, 186 F.3d 620, 624 (5th Cir. 1999) ("Although the number of members in a proposed class is not determinative of whether joinder is impracticable, the size of the class in this case—100 to 150 members—is within the range that generally satisfies the numerosity requirement."). A plaintiff need not, however, demonstrate with precision the number of persons in the class to satisfy the requirement that joinder is impracticable where such a conclusion is clear from reasonable estimates. *In re Concho Res., Inc. Sec. Litig.*, No. 4:21-cv-2473, 2025 U.S. Dist. LEXIS 66272, at *16 (S.D. Tex. Apr. 7, 2025). That said, the "proper focus is not on numbers alone, but on whether joinder of all members is practicable in view of the numerosity of the class and all other relevant factors", such as geographical dispersion of the class, the ease with which class members may be identified, the nature of the action, and the size of each plaintiff's claim. *PeJ.A.V. v. Trump*, 349 F.R.D. 152, 156 (S.D. Tex. 2025) (quoting *Phillips v. Joint Legis. Comm. on Performance & Expenditure Review*, 637 F.2d 1014, 1022 (5th Cir. 1981)).

Here, the class includes approximately 10,750 members, which represents approximately 15% of the up to 71,700 telephone numbers to which Defendant delivered text messages during the Class Period absent prior express written consent or evidence of an established business relationship. *See supra* Summary of Facts Underlying Plaintiff's Claims. Joinder of over ten thousand persons to this action would be impracticable as a matter of course. *See, e.g.*, *Harmon v. Shell Oil Co.*, No. 3:20-cv-00021, 2023 U.S. Dist. LEXIS 157163, at *23 (S.D. Tex. Sep. 6, 2023) ("As to numerosity, joinder would be highly impracticable because the Plan had over 10,000

participants and proposed class members during the class period."); *Sambrano v. United Airlines, Inc.*, 347 F.R.D. 155, 168 (N.D. Tex. 2024) (citing *Mullen* for the proposition that the "classes are sufficiently numerous—each containing hundreds or thousands of class members" to satisfy numerosity requirements under Rule 23(a)(1)); *Pedersen v. Kinder Morgan Inc.*, 345 F.R.D. 302, 312 (S.D. Tex. 2024) (discussing presumption of numerosity when "numbers in excess of forty, particularly those exceeding one hundred or one thousand have sustained the [numerosity] requirement."). Therefore, the Settlement Class is sufficiently numerous that joinder is impracticable, which satisfies Fed. R. Civ. P. 23(a)(1).

### 2. Common questions exist as to each Settlement Class Member.

"Commonality and typicality are not demanding tests." *Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *3; *see also In re Enron Corp. Sec., Derivative & "ERISA" Litig.*, 228 F.R.D. 541, 555 (S.D. Tex. 2005); *see also Walton v. Franklin Collection Agency, Inc.*, 190 F.R.D. 404, 408 (N.D. Miss. 2000) ("The Fifth Circuit has held that the threshold of commonality is not a high one."). To satisfy the commonality requirement under Rule 23(a)(2), class members must raise at least one contention that is central to the validity of each class member's claims. *In re Deepwater Horizon*, 739 F.3d 790, 810 (5th Cir. 2014). These common questions must show that all class members suffered the same injury and their claims for relief "depend upon a common contention," such that their claims are "capable of class-wide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Pedersen*, 345 F.R.D. at 313 (quoting *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). A common issue arises where all putative class members "suffered the same injury," "even when the resulting injurious effects—the damages—are diverse." *Id.* (quoting *In re Deepwater Horizon*, 739 F.3d at 810-11).

This case presents a host of common questions. For example, whether Defendant sent the

text messages at issue, "if these calls constitute 'telephone solicitation,' if Plaintiffs are entitled to damages, the amount of damages, and if Plaintiffs are entitled to injunctive relief" are all common questions of law and fact. *Golan v. Veritas Entm't, LLC*, No. 4:14CV00069 ERW, 2017 U.S. Dist. LEXIS 6684, at *13 (E.D. Mo. Jan. 18, 2017); *see also Meyer v. Bebe Stores, Inc.*, No. 14-CV-00267-YGR, 2016 U.S. Dist. LEXIS 188999, at *12 n.8, *19 (N.D. Cal. Aug. 22, 2016) (in certifying TCPA class involving text messages, finding that "the Court need not reach the merits to find that the nature of the texts is a common question to the class" and that "the question of whether damages will be awarded—and whether they will be trebled—is a common question.").

Also, because each Settlement Class Member suffered the same injury and is therefore entitled to the same statutorily-mandated relief, this case gives rise to another common question. *See, e.g.*, *Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *5 ("[T]hat each member of the settlement class suffered the same injury and is entitled to the same statutorily mandated relief gives rise to another common question."); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 224 (N.D. Ill. 2016) ("Each class member suffered roughly the same alleged injury: receipt of at least one phone call or text message from Chase to her cell phone."); *Birchmeier v. Caribbean Cruise Line, Inc.*, 302 F.R.D. 240, 251 (N.D. Ill. 2014) ("Here there is a common injury, resulting from receipt of the allegedly offending calls . . . . The Court likewise determines that there are questions of law or fact common to each class member.").

### 3.  Plaintiff's claims are typical of the claims of Settlement Class Members.

Typicality requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). "Like commonality, the test for typicality is not demanding." *James v. City of Dall.*, 254 F.3d 551, 571 (5th Cir. 2001). To be typical, the claims and defenses need not be completely identical, rather "the critical inquiry is whether the class representative's claims have the same essential characteristics of those of the

putative class." *Mabary v. Hometown Bank*, N.A., No. 4:10-cv-3936, 2011 U.S. Dist. LEXIS 134437, at *6 (S.D. Tex. Nov. 21, 2011) (quoting *James*, 254 F.3d at 571).

Here, Plaintiff received the same type of text messages that each Settlement Class Member did, subject to the same lack of consent, and was thus harmed in the same way as each Settlement Class Member. *See supra* Summary of Facts Underlying Plaintiff's Claims. Plaintiff's claims are therefore typical of the claims of the Settlement Class. *See, e.g.*, *Gehrich*, 316 F.R.D. at 225 ("All class members allegedly received calls or text messages from Chase in violation of the TCPA, and that is enough to satisfy the typicality requirement."); *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 696 (S.D. Fla. 2015) ("The Court finds that the proposed class representative satisfies the typicality requirements because Plaintiff, like each of the class members, was purportedly sent the same fax and each class member's claim is based on the same legal theory and same set of facts as Plaintiff's claim."); *DeSouza v. Aerocare Holdings LLC*, No. 6:22-cv-1047-RBD-LHP, 2024 U.S. Dist. LEXIS 52076, at *4-5 (M.D. Fla. Mar. 25, 2024) (in certifying settlement class based on TCPA telemarketing text messages, "typicality is met because the class representative's claim arises from the same event and is based on the same legal theory as those of the class—that Plaintiff suffered the same FTSA and TCPA violations as those of the other class members."). Thus, Plaintiff readily satisfies the typicality requirements of Fed. R. Civ. P. 23(a)(3).

### 4. Plaintiff and his counsel will fairly and adequately protect the interests of the Settlement Class.

Rule 23(a)(4) requires that the named plaintiff fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a)(4). "The purpose of this requirement is to uncover conflicts of interest between named parties and the class they seek to represent." *Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *8. While the burden in a class certification motion is on the plaintiff, "the adequacy of the putative representatives and of [Plaintiff's counsel] is presumed in the absence of

specific proof to the contrary." *Id*. (quoting *Feder v. Elec. Data Sys. Corp.*, 429 F.3d 125, 129-130 (5th Cir. 2005)).

Here, Plaintiff is capable of protecting, has protected, and will continue to protect, the interests of the Settlement Class. *See* Exhibit A at ¶ 52. From the outset, Plaintiff has been, and remains, involved in this matter, as he communicates regularly with his counsel, and is prepared to make all necessary decisions involving this case with the Settlement Class's best interests in mind. *Id*. at ¶¶ 53-36. As well, Plaintiff retained counsel experienced and competent in class action litigation, including class action cases brought under the TCPA. *See id*. at ¶¶ 9-25. Indeed, courts have appointed Plaintiff's counsel as class counsel in other consumer protection class actions in the past few years, and Plaintiff's lead counsel, Alex D. Kruzyk has contributed to numerous other approved class actions where he was not individually named as class counsel. *Id*. at ¶¶ 12-13, 17.

### C.  The Settlement Class satisfies the requirements of Rule 23(b).

After satisfying all requirements under Rule 23(a), the Settlement Class must then satisfy elements of Rule 23(b), commonly referred to as predominance and superiority.

### 1.  Questions common to Settlement Class Members predominate over any questions affecting only individual Settlement Class Members.

Rule 23(b)(3) requires that "the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). "The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 623 (1997). This turns on "how a trial on the merits would be conducted if a class were certified." *Gene & Gene LLC v. BioPay LLC*, 541 F.3d 318, 326 (5th Cir. 2008). This "entails identifying the substantive issues that will control the outcome, assessing which issues will predominate, and then determining whether the issues are common to the class, a process that ultimately prevents the class from degenerating into a series of individual trials." *Id*. "When common questions present a

significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998).

The objective of Rule 23(b)(3) is to promote economy and efficiency in actions that are primarily for money damages. Where common questions "predominate," a class action can achieve economies of time, effort, and expense as compared to separate lawsuits, permit adjudication of disputes that cannot be economically litigated individually, and avoid inconsistent outcomes, because the same issue can be adjudicated the same way for the entire class. Fed. R. Civ. P. 23(b)(3), advisory committee's note (1966).

Here, to establish a violation of the TCPA, Plaintiff must demonstrate that Defendant delivered the subject text messages to the Settlement Class absent requisite consent, and whether those text messages—which were standardized in form and format—contained all required information mandated by the TCPA.[7] As such, Plaintiff readily satisfies Fed. R. Civ. P. 23(b)(3).

---

[7]      *See, e.g.*, *Golan*, 2017 U.S. Dist. LEXIS 6684, at *13 (". . . if these calls constitute 'telephone solicitation,' if Plaintiffs are entitled to damages, the amount of damages, and if Plaintiffs are entitled to injunctive relief [are] questions [that] predominate because common evidence may be used to establish the answers."); *St. Louis Heart Ctr., Inc. v. Vein Ctrs. for Excellence, Inc.*, No. 4:12 CV 174 CDP, 2013 U.S. Dist. LEXIS 174975, at *27 (E.D. Mo. Dec. 11, 2013) ("Vein Centers obtained the fax numbers at issue in long lists from a handful of sources and created form advertisements that contained essentially identical opt-out language. Whether that language complies with the TCPA and its applicable regulations is a common question that can be answered on a classwide basis. . . Accordingly, predominance is met."); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that common issues predominate over any individual issues that may arise. The facts necessary to establish liability relate to Defendant's common course of conduct and the transmissions of the faxes, and not to issues with individual class members. And, the class members' claims are brought under the same federal statute and based on the same legal theories. Consequently, the Court finds that common issues predominate over any individual issues that may arise."); *Malta v. Fed. Home Loan Mortg. Corp.*, No. 10-CV-1290 BEN (NLS), 2013 U.S. Dist. LEXIS 15731, at *10 (S.D. Cal. Feb. 5, 2013) ("Here, Plaintiffs'

### 2. A class action is superior to other available methods for the fair and efficient adjudication of this matter.

Rule 23(b)(3) also requires that a district court determine that "a class action is superior to other available methods for the fair and efficient adjudication of the controversy." Fed. R. Civ. P. 23(b)(3). In determining whether a class action is superior, a court may consider: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. *Id.*

In general, litigating TCPA claims as part of a class action is superior to litigating them in successive individual lawsuits. *See Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *12 ("Here, the superiority of a class action is particularly compelling given that the settlement class includes tens-of-thousands of members."); *Knapper v. Cox Commc'ns, Inc.*, 329 F.R.D. 238, 247 (D. Ariz. 2019) ("The Court is persuaded that putative class members who would ultimately become part of the class would have little incentive to prosecute their claims on their own. Should individual putative class members choose to file claims on their own, given the potential class size and the relatively small amount of statutory damages for each case, individual litigation would not promote efficiency or reduce litigation costs. . . . Therefore, the Court finds that a class action is a superior method to adjudicate this matter."); *see also St. Louis Heart Ctr.*, 2013 U.S. Dist. LEXIS 174975,

---

claims present common questions of law and fact, as explained above. The central inquiry is whether Wells Fargo violated the TCPA by making calls to the class members. Accordingly, the predominance requirement is met."). Thus, common questions predominate over any individual issues.

at *31 ("All in all, a class action is superior to other methods of adjudicating this controversy."); *Palm Beach Golf Ctr.-Boca, Inc.*, 311 F.R.D. at 699 ("[T]he Court finds that a class action is superior to other methods for adjudicating the putative class members' TCPA claims."). Here, the superiority of a class action is particularly compelling given that the class includes thousands of members.

Moreover, no one class member has an interest in controlling the prosecution of this action. Simply, the claims of all members of the proposed TCPA classes are identical, they arise from the same standardized conduct, and they result in uniform damages calculated on a per-violation basis. *See James v. JPMorgan Chase Bank, N.A.*, No. 8:15-cv-2424-T-23JSS, 2016 U.S. Dist. LEXIS 167022, at *3 (M.D. Fla. Nov. 22, 2016) ("This class action, which resolves the controversy more fairly and efficiently than a series of individual actions, satisfies Rule 23(b)(3)'s superiority requirement. Because the TCPA permits a maximum award of $500 absent a willful violation, each class member lacks a strong financial interest in controlling the prosecution of his action.").[8] The ten thousand-plus cases from Settlement Class Members here present similar concerns should they be forced to be individually prosecuted, rendering the class action vehicle as the superior method in adjudicating this action.

Without a class action, thousands of claims like Plaintiff's—which stem from Defendant's

---

[8]     *See also Lavigne v. First Cmty. Bancshares, Inc.*, No. 1:15-cv-00934-WJ/LF, 2018 U.S. Dist. LEXIS 94055, at *21-22 (D.N.M. June 5, 2018) ("It is unlikely that putative class members will file a case under TCPA for $500-1500, and will have little interesting in controlling the prosecution of the TCPA claims. Moreover, the complex nature of this TCPA action lends itself to the efficiencies of class certification. It would [be] inefficient to reinvent [the] wheel on approximately 30,000 separate cases. Moreover, the courts would be substantially burdened by 30,000 separate suits — or even a fraction of that. As explained above, Plaintiff has shown that the class action appears to be manageable. Any difficulties in managing this class action are outweighed by the desirability of concentrating this matter in one litigation.").

identical conduct—will most likely go un-redressed, given the relatively small individual value of each individual case. *See Daugherty*, 2025 U.S. Dist. LEXIS 35852, at *13-14 (collecting cases). A class action is therefore the superior method to adjudicate all aspects of this controversy.

## II.    The settlement is fair, reasonable, and adequate, under Rule 23(e).

Rule 23(e) requires that a court preliminarily evaluate the fairness of a class settlement:

> Review of a proposed class action settlement generally involves two hearings. First, counsel submit the proposed terms of settlement and the judge makes a preliminary fairness evaluation. In some cases, this initial evaluation can be made on the basis of information already known, supplemented as necessary by briefs, motions, or informal presentations by the parties. If the case is presented for both class certification and settlement approval, the certification hearing and preliminary fairness evaluation can usually be combined. . . . The judge must make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing.

Manual for Complex Litigation § 21.632 (4th ed. 2004); *see also* 4 Alba Conte & Herbert B. Newberg, Newberg On Class Actions, § 11.25 (4th ed. 2002); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 484 (E.D. La. 2020) (collecting cases).

After the court makes a preliminary fairness evaluation, and notice has been issued, the court must then hold a final fairness hearing to determine whether the proposed settlement is truly fair, reasonable, and adequate. *See* Manual for Complex Litigation § 21.633-34; Newberg, § 11.25.

In determining a preliminary fairness evaluation, a district court's "exercise of discretion is to be tested by inquiries that 'ensure that the settlement is in the interest of the class, does not unfairly impinge on the rights and interests of dissenters, and does not merely mantle oppression.'" *Ayers v. Thompson*, 358 F.3d 356, 368-69 (5th Cir. 2004) (quoting *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)). To do this, courts in the Fifth Circuit look at six factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

Additionally, Rule 23(e) mandates consideration of several additional factors, including that the class representatives and class counsel have adequately represented class members, and that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair, reasonable, and adequate. And in applying these factors, this Court should be guided by the overriding public interest in favor of settlement. *See, e.g.*, *Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public interest in favor of settlement. . . ."); *Odonnell v. Harris Cty., Tex.*, No. H-16-1414, 2019 U.S. Dist. LEXIS 202474, at *27 (S.D. Tex. 2019) (collecting cases).

### A. There was no fraud or collusion behind the settlement.

The parties agreed to settle this matter following lengthy negotiations during the May 7, 2025 mediation before an experienced class action mediator, Seamus Duffy.[9] Exhibit A at ¶ 32. This mediation occurred after meaningful discovery, including the exchange of voluminous telephone data through written discovery (which required numerous conferrals to resolve discovery disputes), and the deposition of Defendant's Rule 30(b)(6) corporate representative.

---

[9]     Seamus Duffy is a former partner at Akin Gump Strauss Hauer & Feld, who focused his practice on the defense of class actions and mass action proceedings. "Seamus is a mediator who leverages over 30 years of experience as a Chambers rated class action litigator and trial lawyer. Widely regarded as one of the leading lawyers in the class action bar, Seamus built a successful record representing telecommunications and other companies in class action and other private aggregate and government enforcement litigation nationwide. He also maintained an active practice advising domestic and international investors regarding case-specific and more generalized US-based litigation risk. Known for his effectiveness advising business leaders and boards of directors and his thoughtful, strategic approach and skill in forging settlements throughout his career, Seamus founded SDMS to help people resolve difficult cases. His mediation approach emphasizes building trust with the parties to illuminate the paths to resolution." https://www.seamusduffymediation.com/#introduction (last visited August 19, 2025).

Exhibit A at ¶¶ 28-32.

Accordingly, the settlement is not the product of collusion, but rather the ultimate result of lengthy arms-length negotiations conducted over many months, and involving the assistance of an experienced mediator. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("any suggestion of fraud or collusion" regarding settlement was "baseless," as "the Settlement was reached only after many months of hard-fought negotiations"). As a result, a presumption of fairness applies. *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *26-27 (collecting cases for the holding that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

### B. The complexity and expense of future litigation supports preliminary approval.

This class settlement constitutes an objectively favorable result for the Settlement Class and outweighs the mere possibility of future relief after protracted and expensive litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

Without a settlement, the parties would have had to continue with extensive discovery, including multiple additional depositions and various subpoenas, brief both class certification and merits-related issues, brief summary judgment motions, ultimately try any issues not resolved through summary judgment, and address any appeals stemming from the results of trial. Exhibit A at ¶ 57. In other words, by agreeing to settle now, the parties avoid expensive and protracted future litigation. *See, e.g.*, *Ayers*, 358 F.3d at 369 ("settling now avoids the risks and burdens of potentially protracted litigation"); *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (noting that the "complexity and expense of future litigation" weighed in favor of settlement approval). Thus, this

17

factor supports preliminary approval.

**C. The stage of the proceedings and the amount of discovery completed.**

This factor entails the court looking to "whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at \*32-33 (quoting *Ayers*, 358 F.3d at 369). However, this factor can be satisfied without formal discovery. *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 639 ("formal discovery is not a prerequisite to approving a settlement as reasonable"); *Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at \*16-17 (E.D. Tex. Dec. 16, 2022) ("Even when the parties have not conducted much formal discovery, this factor can be satisfied when other information demonstrates that the settlement should be approved.").

Here, the parties conducted extensive formal discovery into Defendant's telecommunications practices, including the digital imaging[10] of dozens of cellular telephones used by Defendant in sending the at-issue telemarketing text messages (in turn, involving hundreds of thousands of text messages), addressing diverse issues of consent and parsing through defenses such as an established business relationship between Defendant and the message recipients, as well as the deposition of Defendant's Rule 30(b)(6) corporate representative. Exhibit A at ¶¶ 28-31.

Through the benefit of discovery, the parties identified the total number of telephone numbers that Defendant sent text messages to during the applicable period without prior express written consent, and without proof of an established business relationship. Exhibit A at ¶ 35.

---

[10]    In order to balance the needs and burdens of discovery on the parties, the parties initially agreed to the exchange of a representative sample of class data prior to mediation (and potential briefing on class certification). *See* Exhibit A at ¶ 28. Following the parties' agreement in principle to settle at mediation, the parties thereafter conducted confirmatory discovery to analyze the remaining class data to determine the total pool of potential class members. *Id*. at ¶¶ 33-35.

Following the exchange of multiple rounds of written discovery and the deposition of Defendant's Rule 30(b)(6) corporate representative, and on the eve of class certification briefing, the parties agreed to conduct mediation, and in doing so briefed and exchanged materials regarding the parties' positions of the strengths and weaknesses of their respective positions, propelling the parties towards the proposed class settlement. *See id*. at ¶ 32.

As a result, the parties possessed sufficient information to reach an informed settlement, satisfying this factor. *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *17 (finding this factor satisfied based on the plaintiff's pre-suit investigation and the parties' negotiations during full-day mediation before an experienced mediator, which "enabled the parties to develop a full understanding of the legal and factual issues surrounding the case before agreeing to the proposed settlement."). Post-settlement confirmatory discovery cements this fact.

### D. The probability of Plaintiff's success on the merits, in light of the range of possible recoveries and uncertainty of damages, supports preliminary approval.

"The probability of the plaintiffs' success on the merits is the most important *Reed* factor, 'absent fraud and collusion.'" *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *33 (quoting *Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, 2017 U.S. Dist. LEXIS 42394, at *8 (S.D. Miss. Mar. 23, 2017). This factor involves comparing "the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *18 (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007)). In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial. *DeHoyos*, 240 F.R.D. at 287 (citing *Reed*, 703 F.2d at 172).

In evaluating the fairness of the consideration offered in settlement, it is not the role of the Court to second-guess the negotiated resolution of the parties. The Eighth Circuit has noted: "We

have recognized that a class action settlement is a private contract negotiated between the parties. Rule 23(e) requires the court to intrude on that private consensual agreement merely to ensure that the agreement is not the product of fraud or collusion and that, taken as a whole, it is fair, adequate, and reasonable to all concerned." *In re Wireless Tel. Fed. Cost Recovery Fees Litig.*, 396 F.3d 922, 934 (8th Cir. 2005). That is, the issue is not whether the settlement could have been "better," *but whether it is fair*: "[s]ettlement is the offspring of compromise; the question we address is not whether the final product could be prettier, smarter or snazzier, but whether it is fair, adequate and free from collusion." *Hanlon*, 150 F.3d at 1027.

Here, the parties vehemently disagree about the merits, as easily noted by Defendant's answer and associated host of defenses. *See* ECF No. 11. They also disagree regarding whether Plaintiff could satisfy the elements of Rule 23 in an adversarial proceeding. One of the chief issues in this case would be Defendant's position that individualized consent inquiries, both particular to Plaintiff's individual claims and Defendant's records for the putative class, would preclude class certification. Another complicating factor would be Defendant's incomplete and decentralized recordkeeping: rather than using a single dialing system that would contain records of all of Defendant's outbound communications, Defendant instead used dozens of individual cellular telephone numbers to send text messages to consumers. *See* Exhibit A at ¶ 28. Therefore, the available records of communications are limited to what was stored and what could be obtained on those individual cellular telephones. Although the parties certainly would disagree with how this inconsistent recordkeeping could impact class certification in contested briefing, the parties readily acknowledge that this would impose potential issues both at class certification and trial.

Lastly, the at-issue damages statute—47 U.S.C. § 227(c)(5)(B)—provides for statutory damages of *up-to* $500.00, meaning that statutory damages of less than $500.00 per message would

have been a possible outcome at trial. *See Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 754 (W.D. Tex. 2011) ("Congress has given courts discretion to award less than $500 per violation of the telephone solicitation subsection of the TCPA, § 227(c), but required a $500 minimum for autodialer violations under § 227(b)."); *Watson v. Manhattan Luxury Autos., Inc.*, 2025 U.S. Dist. LEXIS 13042, at *2 (S.D.N.Y. Jan. 24, 2025) ("Unlike other sections of the [TCPA], such as § 227(b) which states that a plaintiff may 'receive $500 in damages for each such violation,' Section 227(c)(5)(C) includes discretionary language that makes clear that plaintiffs may be awarded less than $500 per violation."). Therefore, there is uncertainty whether Plaintiff would be able to obtain as much in damages as he claims.

Additionally, Defendant's financial position strongly favors preliminary approval. Defendant is a regional home developer firm that would face potential solvency issues should this matter fail to settle and the Court or a jury award ultimate judgment in favor of Plaintiff and the proposed class. This could, in turn, lead to appellate challenges and lengthy delays in resolving this matter. As a result, the certainty that comes with *this* settlement—and the substantial compensation available to the members of the class, as detailed below—represents an excellent recovery for the class, particularly in the face of zero recovery should this matter not settle, Defendant expends further resources, and a future class judgment potentially results in less remaining money available to the class, or even drives Defendant to potential insolvency.[11]

---

[11]    *See, e.g.*, *Hung V. Vu, D.D.S. v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639, at *29 (C.D. Cal. Nov. 4, 2022) (approving class settlement amount as fair and reasonable in light of Defendant's financial condition); *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056, at *17 (E.D. Cal. July 25, 2022) (approving class settlement after noting "even though the court has observed that the percentage recovery is relatively low in this action, the court acknowledges that a larger recovery here would

Balanced against the risks of recovery discussed *supra*, the proposed settlement provides substantial cash relief to participating Settlement Class Members. The Settlement Fund of $1,994,123.00 will be non-reversionary, meaning Defendant will have to fund the entire Settlement Amount and no money will return to Defendant. Agreement at §§ I.GG, I.LL. Defendant sent, or attempted to send, at least two text messages to approximately 71,700 telephone numbers during the Class Period without prior express written consent (and without evidence of an established business relationship), of which the parties estimate approximately 10,750 are residential cellular telephone numbers registered on the DNC Registry, so those telephone numbers constitute the universe of potential class members. Exhibit A at ¶¶ 28-30, 34-35, 39. Dividing this sum among those telephone numbers, the anticipated raw, per-potential class member value is between $27.81 ($1,994,123.00 / 71,700 = $27.81)—if 100% of telephone numbers are on the DNC Registry, *which the parties know not to be the case*—and $185.50 ($1,994,123.00 / 10,750 = $185.50), if the ratio of DNC-registered phone numbers in the sampled class data holds true for the entire pool of data. This range is a good-faith estimate, based on 1) a pool of all telephone numbers that received the same text messages as Plaintiff in the Class Period absent prior express written consent, and absent an established business relationship with Defendant; which would then be necessarily narrowed by (2) the subset of those telephone numbers that are residential telephone numbers on the DNC Registry, as opposed to business telephone numbers. As explained *supra*, the representative sampling data produced in discovery shows a 15% registration rate on the DNC Registry, and extrapolating that sample percentage to the total pool of telephone numbers results

---

likely not be possible due to defendant's financial condition."); *accord Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (including the defendant's financial condition as part of the Eighth Circuit's factorial analysis as to fairness, reasonableness, and adequacy of a class settlement).

in 10,750 estimated residential cellular telephone numbers on the DNC Registry.[12] Regardless, as

discussed *supra*, even if 100% of telephone numbers were on the DNC Registry—which the parties

already know to not be the case—the settlement would *still* be fair, reasonable, and adequate. And

if a lesser portion of the class is on the DNC Registry than 15%, that results in an even higher per-

claimant recovery amount.

Thus, the estimated ~$185.50 raw settlement amount per potential class member is not only

in line with the raw, per-potential settlement class member value of many similar TCPA class

action settlements, *it vastly exceeds them. See, e.g.*, *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-

JAR, 2023 U.S. Dist. LEXIS 23103, at *6 (E.D. Mo. Feb. 7, 2023) ($6.42 per potential class

member); *Williams v. Bluestem Brands, Inc.*, No. 171971, 2019 U.S. Dist. LEXIS 56655, at *4

(M.D. Fla. Apr. 2, 2019) (approximately $7 per potential class member); *Prather v. Wells Fargo

Bank, N.A.*, No. 15-4231, ECF No. 36 (N.D. Ga. Feb. 24, 2017) ($4.65 per potential class member);

*Luster v. Wells Fargo Dealer Servs., Inc.*, No. 15-1058, ECF No. 60 (N.D. Ga. Feb. 23, 2017)

($4.65 per potential class member); *James*, 2016 U.S. Dist. LEXIS 167022, at *1 ($5.55 per

potential class member); *Cross v. Wells Fargo Bank, N.A.*, No. 1:15-cv-01270-RWS, 2016 U.S.

Dist. LEXIS 114141 (N.D. Ga. Aug. 18, 2016), *amended on unrelated grounds*, at ECF No. 56

(Sept. 13, 2016) ($4.75 per potential class member); *Markos v. Wells Fargo Bank, N.A.*, No. 15-

---

[12]    Using a sampling of data in discovery should not, and does not, impact the viability of a class settlement. *See, e.g.*, *Thieroff v. Marine Spill Response Corp.*, No. CV 21-6075-GW-MRWx, 2024 U.S. Dist. LEXIS 72068, at *21 (C.D. Cal. Apr. 19, 2024) (approving proposed class settlement informed by data sampling); *In re Wells Fargo Loan Processor Overtime Pay Litig.*, 2011 U.S. Dist. LEXIS 84541, at *27 (N.D. Cal. Aug. 2, 2011) ("The data sample Wells Fargo provided to Plaintiffs included data sets for a subset of employees and pulled from each job title included in the class; there is no indication that the sample cannot fairly and properly be aggregated to the class as a whole for purposes of settlement.").

1156, 2016 U.S. Dist. LEXIS 123541 (N.D. Ga. Sept. 7, 2016) ($4.95 per potential class member); *Wilkins v. HSBC Bank Nev., N.A.*, No. 14-190, 2015 U.S. Dist. LEXIS 23869 (N.D. Ill. Feb. 27, 2015) ($2.95 per potential class member); *Picchi v. World Fin. Network Bank*, No. 11-61797, ECF Nos. 129, 131 (S.D. Fla. Jan. 30, 2015) ($2.63 per potential class member); *Duke v. Bank of Am.*, N.A., No. 12-4009, ECF Nos. 51, 59 (N.D. Cal. Feb. 19, 2014) ($4.15 per potential class member).

Furthermore, the Settlement is expected to exceed, on a per-Claimant recovery basis, many other approved TCPA class action settlements. Indeed, Plaintiff's counsel estimates—based on historical claims rates and the likely number of bona fide class members—that after deducting fees and expenses, Claimants will receive between $1,000.00 and $2,000.00 each—and possibly more. This would far surpass—*by multiples*—many comparable figures in other approved TCPA class settlements. *See, e.g.*, *Miles*, 2023 U.S. Dist. LEXIS 23103, at *6 ($157.10 per claimant); *Gehrich*, 316 F.R.D. at 228 ($52.50 per claimant); *Hashw*, 182 F. Supp. 3d at 947 ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *27-29 (N.D. Ill. Aug. 29, 2016) approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) (claimants received between $20 and $40 each); *Steinfeld v. Discover Fin. Servs.*, No. C 12-01118 JSW, 2014 U.S. Dist. LEXIS 44855, at *5 (N.D. Cal. Mar. 31, 2014) (approving a settlement that distributed less than $50 per claimant, *see* ECF No. 101).

For a particularly apt comparison, Judge Eskridge approved a $1.3 million TCPA settlement resulting in a net payment of approximately $132 per claimant in *Davis v. Mindshare Ventures LLC*, 2020 U.S. Dist. LEXIS 105994, Civil Action No. 4:19-cv-1961, 2020 U.S. Dist.

LEXIS 105994 (S.D. Tex. June 12, 2020). More recently, Judge Hoyt approved an $850,000.00 TCPA settlement resulting in a net payment of approximately $226 per claimant, noting that it "far surpasses comparable figures in other approved TCPA class settlements." *Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 111235, at *8 (S.D. Tex. June 6, 2025). Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017). And what's more, the Settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.- Boca, Inc.*, 311 F.R.D. at 699 (noting that the small potential recovery in individual TCPA actions reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr.*, 2013 U.S. Dist. LEXIS 174975, at *31 (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, Claimants will receive money they would not likely have pursued on their own.

### E. The opinions of the class counsel, class representatives, and absent class members support preliminary approval.

The lack of opposition to the settlement (at this time) favors preliminary approval. *See Van Horn*, 840 F.2d at 606; *see also Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *37-38 ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."). While Plaintiff's motion for preliminary approval is unopposed, class members will be provided with an opportunity to lodge any objections in response to class notice.

Therefore, this factor plays a more important role in connection with final approval, depending on whether, and if so, how many, class members object.

### F. The remaining Rule 23(c)(2) factors support preliminary approval.

Consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[13] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as that the proposal was negotiated at arm's length and that the relief provided to the settlement class is adequate—are subsumed within the above discussion of the *Reed* factors, and Plaintiff does not address them again here. With respect to Plaintiff and his counsel, Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See* Exhibit A at ¶¶ 52-56. He stayed updated on the case and spoke with his counsel about it regularly. *Id.* at ¶ 53. He produced documents, responded to discovery requests, and attended a lengthy mediation. *Id.* at ¶ 54. And he remained prepared to, and did, make all necessary decisions required of him in the best interests of class members. *Id.* at ¶ 56.

---

[13]    The executed Agreement, appended to Exhibit A, is attached, satisfying Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

Similarly, Plaintiff's counsel—who are experienced in complex class action litigation and have served as class counsel (directly, or as associate attorneys) on numerous occasions, zealously litigated on behalf of Plaintiff and the Settlement Class against sophisticated and experienced defense counsel. *See id.* at ¶¶ 9-25, 59-60. And having done so, Plaintiff and his counsel obtained a meaningful recovery for the Settlement Class. *Id.* at ¶¶ 42, 57-58.

Rule 23(e)(2)(D) also requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Here, all Settlement Class Members have the same legal claims. Correspondingly, the Settlement provides that each Claimant will receive an equal portion of the Settlement Fund. Additionally, the release affects each Settlement Class Member in the same way. As a result, consideration of the Rule 23(e)(2) factors supports preliminary approval.

## III.   The notice plan is sufficient.

Pursuant to Rule 23(e) a court must, upon preliminary approval, "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. This notice must be the "best notice practicable," *see* Fed. R. Civ. P. 23(c)(2)(B), which means "individual notice to all members who can be identified through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

Here, and after a competitive bid process, the parties agreed to a robust notice program to be administered by the Administrator: a well-respected third-party claims administrator, Class Experts Group LLC. Exhibit A at ¶¶ 40, 45. Through the notice program, the Administrator will use all reasonable efforts to provide direct mail notice to Settlement Class Members in the forms

attached as exhibits to the Settlement Agreement. *See generally* Agreement at § III.

To start, the Administrator will scrub the list of telephone numbers to which Defendant delivered the text messages in question to identify those that are registered on the DNC Registry. *Id*. Then, the Administrator will identify and verify contact information for persons associated with those remaining telephone numbers. *Id*. In doing so, the Administrator will run information through the National Change of Address system, which updates addresses for all people who moved during the previous four years and filed a change of address with the U.S. Postal Service. *Id*. at § III.B.3. The Administrator will then send Settlement Class Members identified through this process, via U.S. Mail, a postcard notice with a detachable Claim Form. *Id*.

Separately, the Administrator will establish a dedicated Settlement Website, through which Settlement Class Members can review relevant documents filed with this Court, review the summary question-and-answer notice, and submit Claim Forms. *Id*. at § III.B.5. In addition, the Administrator will establish a toll-free telephone number, through which Settlement Class Members can receive additional information. *Id*. at § III.B.6.

To submit a valid Claim, a Settlement Class Members will have to aver that Defendant delivered at least two text messages to his or her cellular telephone number from June 27, 2020 through May 7, 2025. *See generally id*. at § III.C.

The notice program, therefore, complies with Rule 23 and due process because, among other things, it informs Settlement Class Members, directly, of: (1) the nature of this action; (2) the essential terms of the parties' settlement, including the class definition and claims asserted; (3) the binding effect of a judgment if a class member does not request exclusion; (4) the process regarding objections and exclusions, including the time and method for objecting or requesting exclusion, and that settlement class members may make an appearance through counsel; (5)

information regarding Plaintiff's incentive award and his counsel's request for an award of attorneys' fees, costs, and expenses; (6) the procedure for submitting claims to receive settlement benefits; and (7) how to make inquiries, and where to find additional information. Fed. R. Civ. P. 23(c)(2)(B); Manual for Complex Litigation § 21.312.

## IV.    This Court should set a final fairness hearing.

The final step in the settlement approval process is a final fairness hearing, during which the Court hears all evidence and argument necessary to finally evaluate the fairness of a settlement. Fed. R. Civ. P. 23(e)(2). After the final fairness hearing, the Court then determines whether the Settlement should be approved, and whether to enter a judgment and order of dismissal under Rule 23(e). Here, the parties respectfully request that this Court set a date for a final approval hearing, at this Court's convenience, approximately four months after it preliminarily approves the parties' settlement.

## Conclusion

Plaintiff respectfully requests that this Court enter the accompanying order certifying the class for settlement purposes; preliminarily approving the settlement as fair, reasonable, and adequate; appointing Plaintiff as the class representative, and Plaintiff's counsel as class counsel; approving and directing notice to class members; and setting a final fairness hearing date.

Dated: September 2, 2025.          Respectfully submitted,

*/s/ Bryan A. Giribaldo*
Alex D. Kruzyk *(Attorney in Charge)*
Texas Bar No. 24117430
S.D. Tex. ID No. 3412403
Bryan A. Giribaldo
Texas Bar No. 24124547
S.D. Tex. ID No. 3657465
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff and the proposed Settlement Class*