**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| Eric Geaslin, on behalf of himself and all others similarly situated, | |
| Plaintiff, | CASE NO.: 4:24-cv-02418 |
| v. | |
| Colony Ridge Development, LLC d/b/a Terrenos Santa Fe, | |
| Defendant. | |

**PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT**

i

# Table of Contents

Nature and Stage of this Proceeding ........................................................................ 1

Issues to be Ruled on by this Court ......................................................................... 1

Introduction and Summary of the Argument ............................................................ 1

Summary of the Settlement ...................................................................................... 3

Class Notice, Claims, and Exclusions ...................................................................... 4

Argument ................................................................................................................ 5

    I.    This Court should confirm its certification of the Settlement Class under Rule 23 for settlement purposes. ............................................................................................. 5

    II.    The Settlement is fair, reasonable, and adequate under Rule 23(e). ................................ 5

        A.    There was no fraud or collusion behind the settlement. ................................. 7

        B.    The complexity and expense of future litigation support preliminary approval............. 7

        C.    The stage of the proceedings and the amount of discovery completed. ......................... 8

        D.    The probability of Plaintiff's success on the merits, in light of the range of possible recoveries and uncertainty of damages, supports preliminary approval. ............................... 9

        E.    That no Settlement Class Members objected to the Settlement underscores its fairness. .................................................................................................................... 14

        F.    The remaining Rule 23(e)(2) factors support preliminary approval. .......................... 16

    III.    The notice program complied with Rule 23 and due process. ...................................... 17

Conclusion ............................................................................................................ 20

# Table of Authorities[1]

**Cases**

*Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744 (W.D. Tex. 2011) ................................. 11

*Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416 (N.D. Cal. Apr. 15, 2015) .................................................................................................................................... 19

*Belanger v. Allstate Fire*, No. 19-317 WJ/SCY, 2024 U.S. Dist. LEXIS 102539 (D.N.M. June 4, 2024) .................................................................................................................................... 18

*Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, 2020 U.S. Dist. LEXIS 189558 (N.D. Cal. Oct. 9, 2020) .................................................................................................................................... 19

*Burnett v. CallCore Media, Inc.*, Civil Action No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165 (S.D. Tex. June 25, 2024) ................................................................................... 12, 14

*Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056 (E.D. Cal. 2022) ................................................................................................................... 12

*Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127942 (D.D.C. Aug. 29, 2016) ........................................................................................................ 18

*Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841 (E.D. Tex. 2022) ............................................................................................................................... 8, 9, 10

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010) ............................... 15

*Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 111235 (S.D. Tex. June 6, 2025) ...................................................................................................... 13

*Davis v. Mindshare Ventures LLC*, Civil Action No. 4:19-cv-1961, 2020 U.S. Dist. LEXIS 105994 (S.D. Tex. June 12, 2020) ....................................................................................... 13

*DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171 (8th Cir. 1995) ...................................................... 15

*DeHoyos v. Allstate Corp.*, 240 F.R.D. 269 (W.D. Tex. 2007) .................................................... 10

*Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) .................................................................................................... 15

*Gehrich v. Chase Bank United States*, 316 F.R.D. 215 (N.D. Ill. 2016) ..................................... 12

*Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101 (N.D. Cal. Jan. 24, 2012) ............................................................................................................... 19

*Hashw v. Dept. Stores Nat'l. Bank*, 182 F. Supp. 3d 935 (D. Minn. 2016) ................................. 15

*Hung V. Vu, D.D.S. v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639 (C.D. Cal. 2022) .................................................................................................... 12

*In re Austrian & German Bank Holocaust Litig.*, 80 F. Supp. 2d 164 (S.D.N.Y. 2000) .............. 16

*In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781 (N.D. Ill. 2015) ............. 13

*In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456 (E.D. La. 2020) 14

*In re Corrugated Container Antitrust Litig.*, 643 F.2d 195 (5th Cir. 1981) ................................. 14

*In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891 (E.D. La. 2012) ........................................................................................................ 7

*In re Wawa, Inc.*, 141 F.4th 456 (3d Cir. 2025) .......................................................................... 20

*Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291 (S.D. Miss. 2014) ........................................... 7

---

[1]    Per this Court's procedures and preferences, all unpublished cases have been compiled for this Court's review. *See* Appendix B.

*Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) ............................... 8

*Keil v. Lopez*, 862 F.3d 685 (8th Cir. 2017) ............................................................................ 8, 20

*Kincade v. Gen. Tire & Rubber Co.*, 635 F.2d 501 (5th Cir. 1981) ............................................ 6

*Lee v. JDC Healthcare Mgmt., LLC*, Civil Action No. 3:23-cv-01134-E, 2025 U.S. Dist. LEXIS 8958 (N.D. Tex. Jan. 16, 2025) .................................................................................. 14

*Markos v. Wells Fargo Bank, N.A.*, No. 15-1156, 2017 U.S. Dist. LEXIS 17546 (N.D. Ga. Jan. 30, 2017) ....................................................................................................................... 13

*Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 U.S. Dist. LEXIS 739 (N.D.W. Va. Jan. 5, 2026) ....................................................................................................................... 8

*Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 U.S. Dist. LEXIS 23103 (E.D. Mo. Feb. 7, 2023) ....................................................................................................................... 12, 19

*Miller v. Travel Guard Grp., Inc.*, No. 21-cv-09751-TLT, 2024 U.S. Dist. LEXIS 238130 (N.D. Cal. Dec. 9, 2024) ............................................................................................................. 18

*Odonnell v. Harris Cty., Tex.*, No. H-16-1414, 2019 U.S. Dist. LEXIS 202474 (S.D. Tex. 2019) ................................................................................................................................. passim

*Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688 (S.D. Fla. 2015) ........................... 13

*Parker v. Anderson*, 667 F.2d 1204 (5th Cir. 1982) ................................................................... 6

*Poe v. United Ass'n of Journeyman & Apprentices of the Plumbing & Pipefitting Indus. of the United States AFL-CIO Loc. 198 Health & Welfare Fund*, No. 18-00667-BAJ-SDJ, 2021 U.S. Dist. LEXIS 188683 (M.D. La. Sep. 30, 2021) ............................................................... 15

*Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 U.S. Dist. LEXIS 167215 (E.D. Mo. Dec. 7, 2015) ....................................................................................................................... 19

*Reed v. Gen. Motors Corp.*, 703 F.2d 170 (5th Cir. 1983) ......................................................... 10

*Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641 (N.D. Cal. Aug. 29, 2014) ............................................................................................................. 13, 19

*Santinac v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, 2017 U.S. Dist. LEXIS 42394 (S.D. Miss. Mar. 23, 2017) ......................................................................... 15

*Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783 (D. Colo. Apr. 22, 2015) ................................................................................................................. 15

*Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 145266 (S.D. W. Va. Oct. 27, 2015) ....................................................................................................................... 18

*St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence*, Inc., No. 12-174, 2013 U.S. Dist. LEXIS 174975 (E.D. Mo. Dec. 11, 2013) ....................................................................... 14

*Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-cv-0784-KSM, 2022 U.S. Dist. LEXIS 113277 (E.D. Pa. June 27, 2022) ................................................................................... 18

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632 (5th Cir. 2012) ........................ 6, 8

*Van Horn v. Trickey*, 840 F.2d 604 (8th Cir. 1988) ............................................................. 12, 14

*Watson v. Manhattan Luxury Autos., Inc.*, 2025 U.S. Dist. LEXIS 13042 (S.D.N.Y. 2025) ....... 11

*Wineland v. Casey's General Stores, Inc.*, 267 F.R.D. 669 (S.D. Iowa 2009) ........................... 15

*Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729 (N.D. Ill. Aug. 29, 2016) ....................................................................................................................... 13

**Statutes**

28 U.S.C. § 1715 ......................................................................................................................... 5

47 U.S.C. § 227 ................................................................................................................. 1, 11, 16

## Nature and Stage of this Proceeding

Eric Geaslin ("Plaintiff") filed this class action under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227, on behalf of himself and a nationwide class, alleging that Colony Ridge Development, LLC d/b/a Terrenos Santa Fe ("Defendant") delivered telemarking text messages to his cellular telephone number as well as those of similarly situated individuals promoting its business, despite never receiving prior express written consent, and despite these cell phone numbers' registration on the National Do-Not-Call Registry ("DNC Registry"). *See generally* ECF No. 1. Following over a year of vigorously contested litigation and extensive arm's-length negotiations assisted by an experienced mediator, Seamus Duffy, the parties reached an agreement to resolve this matter on behalf of the class. On September 2, 2025, Plaintiff filed his unopposed motion for class certification and preliminary approval of class settlement pursuant to the Parties' class settlement agreement. ECF No. 32. On September 17, 2025, this Court entered an order preliminarily approving the proposed class settlement, and ordering that Plaintiff file his fee petition and request for an incentive award by November 17, 2025—which Plaintiff filed on November 17, 2025—and that Plaintiff file his motion for final approval by January 14, 2026. ECF No. 33. This motion for final approval follows.

## Issues to be Ruled on by this Court

Whether this Court should grant Plaintiff's unopposed request to: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) as part of determining the Settlement as fair, reasonable, and adequate, granting Plaintiff's request for attorney's fees, costs, and an incentive award as argued in ECF No. 34; and (3) enter the proposed Final Order and Judgment attached to this Motion.

## Introduction and Summary of the Argument

Following over a year of vigorously contested litigation and extensive arm's-length

negotiations facilitated by an experienced mediator, the parties reached a class settlement to resolve Plaintiff's claims brought under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227. Pursuant to this Settlement,[2] Defendant will create an all-cash, non-reversionary, $1,994,123.00 common fund (the "Settlement Amount") to compensate members of the settlement class ("Settlement Class Members"). As a result, the 333 participating Settlement Class Members each stand to receive approximately $3,787.06.[3] As explained below, this is a truly exceptional result, and perhaps one of the most successful TCPA settlements *ever* in terms of anticipated per-member recovery.

On September 17, 2025, this Court preliminarily approved the Settlement. *See* ECF No. 33. Thereafter, the class administrator—Class Experts Group LLC (the "Administrator")—sent the Court-approved notice, with a detachable claim form, via direct mail to potential class members. In addition, the Administrator published notice of the Settlement on a dedicated website, www.ColonyRidgeTCPASettlement.com. Notice was effectively delivered to the vast majority of potential class members, and zero objections were made to the Settlement, nor did any persons seek exclusion from the Settlement.[4] Moreover, no objections resulted from notice provided to governmental agencies under the Class Action Fairness Act ("CAFA"). In light of the Settlement's considerable benefits and the lack of opposition from Defendant or any Settlement Class Members,

---

[2]    Unless otherwise indicated, this motion for final approval re-incorporates the defined terms in the parties' settlement agreement. *See generally* ECF No. 32-2 at 2-21.

[3]    This expected per-claimant net recovery accounts for the expected notice and administration costs, an award of attorneys' fees and litigation expenses, and a service award. *See* ECF No. 34. The per-claimant recovery may change slightly if additional timely-mailed claims are received or if any claims are subsequently discovered to be invalid.

[4]    The objection and exclusion deadline was December 15, 2025. *See* ECF No. 33 at 12.

Plaintiff respectfully submits that this Court should finally approve the Settlement and enter a Final

Order and Judgment.

## Summary of the Settlement

The parties agreed to resolve this matter on behalf of the following Settlement Class:

All persons throughout the United States (1) to whom Colony Ridge Development, LLC d/b/a Terrenos Santa Fe delivered, or caused to be delivered, more than one text message within a 12-month period, promoting Colony Ridge Development, LLC d/b/a Terrenos Santa Fe's or its business partners' goods or services, (2) where the person's residential telephone number had been registered with the National Do Not Call Registry for at least thirty days before Colony Ridge Development, LLC d/b/a Terrenos Santa Fe delivered, or caused to be delivered, at least two of the text messages within the 12-month period, (3) whose residential telephone numbers are included in the Settlement Class Data, (4) between June 27, 2020 and May 7, 2025.

*See* the parties' settlement agreement, located at ECF No. 32-2 at 2-20 (the "Agreement"), at

§I.HH. Pursuant to the Agreement, Defendant will pay a Settlement Amount of $1,994,123.00 into

a non-reversionary Settlement Fund to compensate Settlement Class Members for the settlement

of their claims.[5] *Id.* at §§ I.GG, I.LL.

Paid from the Settlement Fund will be the compensation to Settlement Class Members after

deducting the cost of notice to potential Settlement Class Members and claims administration,

litigation costs and expenses, for which Class Counsel petitioned this Court attorneys' fees,

calculated as a percentage of the Settlement Fund, for which Class Counsel petitioned this Court

and an incentive award to Plaintiff, for which he petitioned this Court (collectively, "Expenses").

---

[5]     As a result of mediation, the parties agreed to settle this matter for a sum of $2,000,000.00 based on a representative sample of class data, while acknowledging that confirmatory discovery would be needed to identify all potential class members and convert the sampled data into the necessary data to effectuate this settlement. As part of that confirmatory discovery, Defendant needed to pay a third-party vendor to collect data from the dozens of cellular telephones used by Defendant to deliver the communications at-issue, and the parties agreed at mediation to deduct those third-party expenses from the final settlement sum. Defendant paid $5,877.00 to that vendor, and so that sum was deducted from the initially-agreed $2,000,000.00 settlement sum.

*See generally* ECF No. 34. After these deductions, it is expected that the participating Settlement Class Members ("Claimants") will receive Claim Settlement Payments of approximately $3,787.06.

### Class Notice, Claims, and Exclusions

The Administrator successfully delivered notice to potential Settlement Class Members in accordance with this Court's Preliminary Approval Order. *See* Declaration of Christina Peters-Stasiewicz ("Peters-Stasiewicz Dec."), attached as Exhibit A.[6]

*Direct Mail Notice:* After performing reverse telephone number look-ups on the telephone numbers provided to it by Defendant as belonging to potential Settlement Class Members who could have received the telemarketing text messages, the Administrator delivered postcards to potential Settlement Class Members, which included a summary notice of the settlement and a detachable claim form. *See* Peters-Stasiewicz Dec., ¶¶ 5-6. This notice was mailed to 12,917 potential Settlement Class Members, and only 1,683 notice mailings were returned as undeliverable, and for whom the issue was unable to be cured. *See id*. at ¶ 6.

*Settlement Website*: To supplement the robust direct mail notice program, the Administrator established and maintained a Settlement Website dedicated to the Settlement, www.ColonyRidgeTCPASettlement.com. The Settlement Website includes information pertinent to Settlement Class Members, such as court filings and answers to frequently asked questions. *Id.* at ¶ 9. Settlement Class Members were able to view notice documents and submit claims via the Settlement Website. *Id.*

---

[6]    All "exhibits" referenced in this motion are contained within Appendix A, pursuant to this Court's procedures and preferences.

*Toll-Free Information Line*: The Administrator established and maintains a toll-free telephone number—(866) 494-1937—for Settlement Class Members to obtain information about the Settlement. *Id.* at ¶ 8.

*Claims*: As of January 14, 2026, 333 valid claims were received by the Administrator. *Id.* at ¶ 14. 523 invalid claims, and 78 duplicate claims, were also submitted. *Id.*

*Exclusions*: No Settlement Class Member requested to be excluded from the Settlement. *Id.* at ¶¶ 11, 13.

*Objections*: No Settlement Class Member objected to the Settlement. *Id.*

*Class Action Fairness Act Notice*: The Administrator timely served notice required by the CAFA.[7] *Id.* at ¶ 4. No government official objected to or raised an issue regarding the Settlement.

## Argument

### I.    This Court should confirm its certification of the Settlement Class under Rule 23 for settlement purposes.

This Court previously certified the Settlement Class for settlement purposes. *See* ECF No. 33. Because nothing has changed in the interim warranting a departure from the Court's reasoning, Plaintiff respectfully submits that this Court should confirm its certification of the Settlement Class for settlement purposes for the many reasons detailed below.

### II.    The Settlement is fair, reasonable, and adequate under Rule 23(e).

"A district court has discretion to approve a class-action settlement under Rule 23(e) if the settlement is fair, adequate, and reasonable." *Ayers v. Thompson*, 358 F.3d 356, 368 (5th Cir. 2004)

---

[7]    CAFA calls for notice to the attorneys general to be mailed within ten days of submission of a proposed class action settlement, *See* 28 U.S.C. § 1715(b). Here, notice was mailed on September 12, 2025. Peters-Stasiewicz Dec., ¶ 4.

(citing *Parker v. Anderson*, 667 F.2d 1204, 1208-09 (5th Cir. 1982))[8]. Consideration of fairness,

adequacy, and reasonableness is guided by considering the following six *Reed* factors:

> (1) the existence of fraud or collusion behind the settlement; (2) the complexity, expense and likely duration of the litigation; (3) the stage of the proceedings and the amount of discovery completed; (4) the probability of plaintiffs' success on the merits; (5) the range of possible recovery; and (6) the opinions of the class counsel, class representatives, and absent class members.

*Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 639 n.11 (5th Cir. 2012).

Additionally, Rule 23(e) mandates consideration of several additional factors, including

that the class representatives and class counsel have adequately represented class members, and

that the settlement treats class members equitably relative to each other. Fed. R. Civ. P. 23(e).

Here, each relevant factor supports the conclusion that the settlement is fundamentally fair,

reasonable, and adequate. And in applying these factors, this Court should be guided by the

overriding public interest in favor of settlement. *See, e.g.*, *Kincade v. Gen. Tire & Rubber Co.*, 635

F.2d 501, 507 (5th Cir. 1981) ("Particularly in class action suits, there is an overriding public

interest in favor of settlement. . . ."); *Odonnell v. Harris Cty., Tex.*, No. H-16-1414, 2019 U.S.

Dist. LEXIS 202474, at *27 (S.D. Tex. 2019) (collecting cases).

Because this Court previously considered the *Reed* factors in granting preliminary

approval—*see* ECF No. 33 at 3-4—and no facts or developments have since come to light that

would negatively impact such an analysis because no persons submitted any objections or

exclusions to the Settlement, this Court should fully determine that the Settlement is fundamentally

fair, reasonable, adequate, and in the best interests of the Settlement Class Members.

---

[8]    Unless otherwise indicated, all emphasis is added, and all internal citations and quotations are omitted.

### A. There was no fraud or collusion behind the settlement.

The parties agreed to settle this matter following lengthy negotiations during the May 7, 2025 mediation before an experienced class action mediator, Seamus Duffy, which occurred after meaningful discovery, including the exchange of voluminous telephone data through written discovery (which required numerous conferrals to resolve discovery disputes), and the deposition of Defendant's Rule 30(b)(6) corporate representative. *See* ECF No. 32-1 at ¶¶ 28-32.

Accordingly, the Settlement is not the product of collusion, but rather the ultimate result of lengthy arms-length negotiations involving the assistance of an experienced mediator. *See In re Oil Spill by Oil Rig Deepwater Horizon in Gulf of Mexico, on April 20, 2010*, 910 F. Supp. 2d 891, 931 (E.D. La. 2012) ("any suggestion of fraud or collusion" regarding settlement was "baseless," as "the Settlement was reached only after many months of hard-fought negotiations"). As a result, a presumption of fairness applies. *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *26-27 (collecting cases for the holding that "[a] presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel after meaningful discovery.").

### B. The complexity and expense of future litigation support preliminary approval.

This class settlement constitutes an objectively favorable result for the Settlement Class and outweighs the mere possibility of future relief after protracted and expensive litigation. *See Jenkins v. Trustmark Nat'l Bank*, 300 F.R.D. 291, 303 (S.D. Miss. 2014) ("Although this Action was actively litigated for over two years, recovery by any means other than settlement would require additional years of litigation.").

Without a settlement, the parties would have had to continue with extensive discovery, including multiple additional depositions and various subpoenas, brief both class certification and summary judgment motions, ultimately try any issues not resolved through summary judgment,

and address any appeals stemming from the results of trial. ECF No. 32-1 at ¶ 57. In other words, by agreeing to settle now, the parties avoided expensive and protracted future litigation. *See, e.g.*, *Ayers*, 358 F.3d at 369 ("settling now avoids the risks and burdens of potentially protracted litigation"); *Keil v. Lopez*, 862 F.3d 685, 698 (8th Cir. 2017) (noting that the "complexity and expense of future litigation" weighed in favor of settlement approval).

Not only does the Settlement result in the Settlement Class obtaining significant recovery now, rather than following lengthy additional litigation, but it also guarantees them compensation when prevailing on the merits was not a certainty.  For example, a minority of courts have recently ruled that text messages are not protected under the cause of action at-issue here. *Compare, e.g.*, *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894 (C.D. Ill. 2025) (finding that text messages are no longer subject to TCPA protections) *with Mey v. Liberty Home Guard, LLC*, No. 5:23-CV-281, 2026 U.S. Dist. LEXIS 739, at *20 (N.D.W. Va. Jan. 5, 2026) (holding otherwise, and collecting cases). Accordingly, this Settlement mitigates the uncertainty that the Settlement Class faced of ultimately losing on the merits, which would have precluded any recovery at all. Thus, this factor supports preliminary approval.

### C.  The stage of the proceedings and the amount of discovery completed.

In evaluating whether a class settlement is fair and reasonable, the Court should consider "whether 'the parties and the district court possess ample information with which to evaluate the merits of the competing positions.'" *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *32-33 (quoting *Ayers*, 358 F.3d at 369). However, "formal discovery is not a prerequisite to approving a settlement as reasonable."  *Union Asset Mgmt. Holding A.G.*, 669 F.3d at 639; *see also Celeste v. Intrusion Inc.*, No. 4:21-CV-307-SDJ, 2022 U.S. Dist. LEXIS 226841, at *16-17 (E.D. Tex. Dec. 16, 2022) ("Even when the parties have not conducted much formal discovery, this factor can be satisfied when other information demonstrates that the settlement should be approved.").

Here, the parties conducted extensive formal discovery into Defendant's telecommunications practices, including the digital imaging of dozens of cellular telephones used by Defendant in sending the at-issue telemarketing text messages (in turn, involving hundreds of thousands of text messages), addressing diverse issues of consent and parsing through defenses such as an established business relationship between Defendant and the message recipients, as well as the deposition of Defendant's Rule 30(b)(6) corporate representative. *See* ECF No. 32-1 at ¶¶ ¶¶ 28-31. This allowed the parties to identify the total number of telephone numbers to which Defendant sent text messages, without prior express written consent and without proof of an established business relationship, during the applicable period. *Id*. at ¶ 35. Following this discovery and the deposition of Defendant's Rule 30(b)(6) corporate representative, and on the eve of class certification briefing, the parties agreed to conduct mediation. Prior to mediation, the parties exchanged comprehensive briefs regarding their respective positions, which allowed each party to be well-informed about their relative strengths and weaknesses. The culmination of this exchange of discovery and briefing led to the class settlement. *See id*. at ¶ 32.

As a result, the parties certainly possessed sufficient information to reach an informed settlement, satisfying this factor. *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *17 (finding this factor satisfied based on the plaintiff's pre-suit investigation and the parties' negotiations during full-day mediation before an experienced mediator, which "enabled the parties to develop a full understanding of the legal and factual issues surrounding the case before agreeing to the proposed settlement.").

### D. The probability of Plaintiff's success on the merits, in light of the range of possible recoveries and uncertainty of damages, supports preliminary approval.

"The probability of the plaintiffs' success on the merits is the most important *Reed* factor, 'absent fraud and collusion.'" *Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *33 (quoting *Santinac*

*v. Worldwide Labor Support of Ill., Inc.*, No. 1:15CV25-LG-RHW, 2017 U.S. Dist. LEXIS 42394, at *8 (S.D. Miss. Mar. 23, 2017). This factor involves comparing "the terms of the settlement with the rewards the class would have been likely to receive following a successful trial." *Celeste*, 2022 U.S. Dist. LEXIS 226841, at *18 (quoting *DeHoyos v. Allstate Corp.*, 240 F.R.D. 269, 287 (W.D. Tex. 2007)). In evaluating the likelihood of success, the Court must compare the terms of the settlement with the rewards the class would have been likely to receive following a successful trial. *DeHoyos*, 240 F.R.D. at 287 (citing *Reed v. Gen. Motors Corp.*, 703 F.2d 170, 172 (5th Cir. 1983)).

Here, the parties vehemently disagree about the merits, as easily noted by Defendant's answer and associated host of defenses—ECF No. 11—and that they also disagree regarding whether Plaintiff could satisfy the elements of Rule 23 in an adversarial proceeding. One of the chief issues in this case was Defendant's position that individualized consent inquiries, both particular to Plaintiff's individual claims and Defendant's records for the putative class, would preclude class certification. Another complicating factor was Defendant's incomplete and decentralized recordkeeping: rather than using a single dialing system that would contain records of all of Defendant's outbound communications, Defendant instead used dozens of individual cellular telephone numbers to send text messages to consumers. *See* ECF No. 32-1 at ¶ 28. Therefore, the available records of communications are limited to what was stored and what could be obtained on those individual cellular telephones. Although the parties certainly would disagree with how this inconsistent recordkeeping could impact class certification in contested briefing, the parties readily acknowledge that this would impose potential issues both at class certification and trial. Additionally, as referenced *supra* Argument § II.B, some outlier courts have recently held that text messages do not qualify for the TCPA's protections after recent Supreme Court rulings weakened the degree of deference afforded to FCC guidance, further supporting the argument that

this factor favors settlement approval.

Lastly, the at-issue damages statute—47 U.S.C. § 227(c)(5)(B)—provides for statutory damages of *up-to* $500.00, meaning that statutory damages of less than $500.00 per message would have been a possible outcome at trial. *See Adamcik v. Credit Control Servs.*, 832 F. Supp. 2d 744, 754 (W.D. Tex. 2011) ("Congress has given courts discretion to award less than $500 per violation of the telephone solicitation subsection of the TCPA, § 227(c), but required a $500 minimum for autodialer violations under § 227(b)."); *Watson v. Manhattan Luxury Autos., Inc.*, 2025 U.S. Dist. LEXIS 13042, at *2 (S.D.N.Y. Jan. 24, 2025) ("Unlike other sections of the [TCPA], such as § 227(b) which states that a plaintiff may 'receive $500 in damages for each such violation,' Section 227(c)(5)(C) includes discretionary language that makes clear that plaintiffs may be awarded less than $500 per violation."). Therefore, there is uncertainty whether Plaintiff would be able to obtain as much in damages as he claims.

Additionally, Defendant's financial position strongly favors preliminary approval. Defendant is a regional home developer firm that could face potential financial issues should this matter fail to settle and the Court or a jury award ultimate judgment in favor of Plaintiff and the proposed class. This could, in turn, lead to appellate challenges and lengthy delays in resolving this matter. As a result, the certainty that comes with *this* settlement—and the substantial compensation available to the members of the class, as detailed below—represents an excellent recovery for the class, particularly in the face of zero recovery should this matter not settle, Defendant expends further resources, and a future class judgment potentially results in less

remaining money available to the class, or even drives Defendant to potential insolvency.[9]

Balanced against the risks of recovery discussed *supra*, the proposed settlement provides substantial cash relief to participating Settlement Class Members. The Settlement Fund of $1,994,123.00 will be non-reversionary, meaning Defendant will have to fund the entire Settlement Amount and no money will return to Defendant. Agreement at §§ I.GG, I.LL.

Against this backdrop, and given the considerable risks and uncertainties at play, the $1,994,123.00 Settlement Amount constitutes a truly excellent result for Settlement Class Members. Indeed, the Settlement provides substantial net cash relief—more than $3,700.00 per Claim Settlement Payment—to each Claimant. This substantial Claim Settlement Payment is not only in line with the raw, per-potential settlement class member value of many similar TCPA class action settlements, *it vastly exceeds them by a magnitude of multiples*. *See, e.g., Burnett v. CallCore Media, Inc.*, Civil Action No. 4:21-cv-03176, 2024 U.S. Dist. LEXIS 112165, at *12 (S.D. Tex. June 25, 2024) ("Here, the settlement provides relief of $2 million, none of which will revert to CallCore, and each claimant will receive an average of approximately $450.00."); *Miles v. Medicredit, Inc.*, No. 4:20-cv-1186-JAR, 2023 U.S. Dist. LEXIS 23103, at *6 (E.D. Mo. Feb. 7, 2023) ($157.10 per claimant); *Gehrich v. Chase Bank United States*, 316 F.R.D. 215, 228 (N.D. Ill. 2016) ($52.50 per claimant); *Hashw v. Dept. Stores Nat'l. Bank*, 182 F. Supp. 3d 935, 947 (D.

---

[9]    *See, e.g., Hung V. Vu, D.D.S. v. I Care Credit, LLC*, No. CV 17-04609 RAO, 2022 U.S. Dist. LEXIS 201639, at *29 (C.D. Cal. Nov. 4, 2022) (approving class settlement amount as fair and reasonable in light of Defendant's financial condition); *Cavazos v. Salas Concrete, Inc.*, No. 1:19-cv-00062-DAD-EPG, 2022 U.S. Dist. LEXIS 132056, at *17 (E.D. Cal. July 25, 2022) (approving class settlement after noting "even though the court has observed that the percentage recovery is relatively low in this action, the court acknowledges that a larger recovery here would likely not be possible due to defendant's financial condition."); *accord Van Horn v. Trickey*, 840 F.2d 604, 607 (8th Cir. 1988) (including the defendant's financial condition as part of the Eighth Circuit's factorial analysis as to fairness, reasonableness, and adequacy of a class settlement).

Minn. 2016) ($33.20 per claimant); *Wright v. Nationstar Mortg. LLC*, No. 14 C 10457, 2016 U.S. Dist. LEXIS 115729, at *27-29 (N.D. Ill. Aug. 29, 2016) (approximately $45 per claimant); *In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 789 (N.D. Ill. 2015) (finding that $34.60 per person falls "within the range of recoveries" in a TCPA class action); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 U.S. Dist. LEXIS 121641, at *30 (N.D. Cal. Aug. 29, 2014) (claimants received between $20.00 and $40.00 each). For a particularly apt comparison, Judge Eskridge approved a $1.3 million TCPA settlement resulting in a net payment of approximately $132 per claimant in *Davis v. Mindshare Ventures LLC*, Civil Action No. 4:19-cv-1961, 2020 U.S. Dist. LEXIS 105994 (S.D. Tex. June 12, 2020). More recently, Judge Hoyt approved an $850,000.00 TCPA settlement resulting in a net payment of approximately $226 per claimant, noting that it "far surpasses comparable figures in other approved TCPA class settlements." *Daugherty v. Credit Bureau Servs. Ass'n*, No. 4:23-cv-01728, 2025 U.S. Dist. LEXIS 111235, at *8 (S.D. Tex. June 6, 2025). Additionally significant, the court in *Markos v. Wells Fargo Bank, N.A.* characterized a $24 per-claimant recovery in a TCPA class action as "an excellent result when compared to the issues Plaintiffs would face if they had to litigate the matter." No. 15-1156, 2017 U.S. Dist. LEXIS 17546, at *11 (N.D. Ga. Jan. 30, 2017).

Simply put, given that outstanding per-Claimant Claim Settlement Payment following an effective notice campaign—and with a claims rate well within the typical range—this Settlement ranks among the very best for TCPA class actions on a per-person basis.

And what's more, the Settlement provides Settlement Class Members with real monetary relief, despite the purely statutory damages at issue—damages that courts have deemed too small to incentivize individual actions. *See, e.g.*, *Palm Beach Golf Ctr.-Boca, Inc. v. Sarris*, 311 F.R.D. 688, 699 (S.D. Fla. 2015) (noting that the small potential recovery in individual TCPA actions

reduced the likelihood that class members will bring suit); *St. Louis Heart Cntr., Inc. v. Vein Cntrs. for Excellence*, Inc., No. 12-174, 2013 U.S. Dist. LEXIS 174975, at *31 (E.D. Mo. Dec. 11, 2013) (explaining that because the statutory damages available to each individual class member are small, it is unlikely that class members have an interest in individually controlling the prosecution of separate actions). Therefore, because of the Settlement, Claimants will receive money they would not likely have pursued on their own.

### E. That no Settlement Class Members objected to the Settlement underscores its fairness.

The lack of opposition to the settlement favors preliminary approval. *See Van Horn*, 840 F.2d at 606; *see also Odonnell*, 2019 U.S. Dist. LEXIS 202474, at *37-38 ("The endorsement of class counsel is entitled to deference, especially in light of class counsel's significant experience in complex civil litigation and their lengthy opportunity to evaluate the merits of the claims."); *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 424 F. Supp. 3d 456, 491 (E.D. La. 2020) ("The absence or small number of objections may provide a helpful indication that the settlement is fair, reasonable, and adequate.") (citing *In re Corrugated Container Antitrust Litig.*, 643 F.2d 195, 217-18 (5th Cir. 1981)).

Of the thousands of Settlement Class Members to whom the Administrator distributed direct mail notice, *zero* excluded themselves from the Settlement or lodged any kind of objection to it. *See* Peters-Stasiewicz Dec., ¶¶ 11, 13. This overwhelmingly favorable reaction to the Settlement supports its approval. *See e.g.*, *Lee v. JDC Healthcare Mgmt., LLC*, Civil Action No. 3:23-cv-01134-E, 2025 U.S. Dist. LEXIS 8958, at *3 (N.D. Tex. Jan. 16, 2025) (noting that "there have been no objections and no opt-outs filed by any Settlement Class Member to the proposed Settlement" as a reason for granting final approval of proposed class settlement); *Burnett*, 2024 U.S. Dist. LEXIS 112165, at *20 (same); *Poe v. United Ass'n of Journeyman & Apprentices of the*

*Plumbing & Pipefitting Indus. of the United States AFL-CIO Loc. 198 Health & Welfare Fund*,
No. 18-00667-BAJ-SDJ, 2021 U.S. Dist. LEXIS 188683, at *5 (M.D. La. Sep. 30, 2021) (same);
*accord DeBoer v. Mellon Mortg. Co.*, 64 F.3d 1171, 1178 (8th Cir. 1995) ("The fact that only a
handful of class members objected to the settlement similarly weighs in its favor."); *Wineland v.
Casey's General Stores, Inc.*, 267 F.R.D. 669, 676 (S.D. Iowa 2009) ("No objections have been
lodged against the proposed Settlement Agreement by either the class or opt-in collective members
and no class members appeared at the fairness hearing in this matter. Such overwhelming support
by class members is strong circumstantial evidence supporting the fairness of the Settlement.").
And, to be sure, all material information was presented to the Settlement Class Members in
advance of their claim or objection deadline: Class Counsel fully briefed all fee, expense, and
incentive award claims well before the deadline for potential Settlement Class Members to weigh
in on the fairness of the Settlement.

Given that none of the thousands of potential Settlement Class Members—nor any
attorneys general—made an objection to the Settlement, the Court should approve it. *See, e.g.*,
*Shaw v. Interthinx, Inc.*, No. 13-CV-01229-REB-NYW, 2015 U.S. Dist. LEXIS 52783, at *11 (D.
Colo. Apr. 22, 2015) ("[N]ot a single person objected to the Settlement, and only one class member
excluded himself from it. This is a strong indication that the Settlement is fair, reasonable, and
adequate."); *see also Garcia v. Gordon Trucking, Inc.*, No. 1:10-CV-0324 AWI SKO, 2012 U.S.
Dist. LEXIS 160052, at *17 (E.D. Cal. Oct. 31, 2012) ("The adequacy of the amount offered in
settlement is also reinforced by the absence of any objection to the Settlement, as well as the low
opt-out rate of less than 1% of the class."); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d
848, 852 (N.D. Cal. 2010) ("The reaction of class members to the proposed settlement, or perhaps
more accurately the absence of a negative reaction, strongly supports settlement."); *In re Austrian*

15

*& German Bank Holocaust Litig.*, 80 F. Supp. 2d 164, 175 (S.D.N.Y. 2000) ("If only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement.").

**F.   The remaining Rule 23(e)(2) factors support preliminary approval.**

Consideration of the factors set forth in Rule 23(e) likewise supports preliminary approval. More specifically, Rule 23(e)(2) requires courts to consider whether (A) the class representative and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3);[10] and (D) the proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2).

Several of these factors—such as that the proposal was negotiated at arm's length and that the relief provided to the settlement class is adequate—are subsumed within the above discussion of the *Reed* factors, and Plaintiff does not address them again here. With respect to whether Plaintiff and Class Counsel adequately represented the Settlement Class—this factor is easily satisfied. Plaintiff was, throughout this matter, committed to acting in the best interests of Settlement Class Members. *See generally* Geaslin Declaration, located at ECF No. 34-1 at 17-19; *see also* ECF No. 32-1 at ¶¶ 52-56. He stayed updated on the case and spoke with his counsel

---

[10]   The executed Agreement, filed under ECF No. 32-2 at 2-20, was previously presented for the Court's review, satisfying Rule 23(e)(3). *See* Fed. R. Civ. P. 23(e)(3) ("The parties seeking approval must file a statement identifying any agreement made in connection with the proposal.").

about it regularly. *Id.* at ¶ 53. He produced documents, responded to discovery requests, and attended a lengthy mediation. *Id.* at ¶ 54. And he remained prepared to, and did, make all necessary decisions required of him in the best interests of class members. *Id.* at ¶ 56. Similarly, Class Counsel—who are experienced in complex class action litigation and have served as class counsel (directly, or as associate attorneys) on numerous occasions—zealously litigated on behalf of Plaintiff and the Settlement Class against sophisticated and experienced defense counsel. *See id.* at ¶¶ 9-25, 59-60. And having done so, Plaintiff and Class Counsel obtained a meaningful recovery for the Settlement Class. *Id*. at ¶¶ 42, 57-58.

Rule 23(e)(2)(D) also requires a court to confirm that a class action settlement treats all class members equitably. The Advisory Committee's Note to Fed. R. Civ. P. 23(e)(2)(D) advises that courts should consider "whether the apportionment of relief among class members takes appropriate account of differences among their claims, and whether the scope of the release may affect class members in different ways that bear on the apportionment of relief." Here, all Settlement Class Members have the same legal claims. Correspondingly, the Settlement provides that each Claimant will receive an equal portion of the Settlement Fund. Additionally, the release affects each Settlement Class Member in the same way. As a result, consideration of the Rule 23(e)(2) factors supports preliminary approval.

## III.    The notice program complied with Rule 23 and due process.

Pursuant to Rule 23(e), this Court previously directed notice in a reasonable manner to all Settlement Class Members who would be bound by the Settlement. *See* ECF No. 33 at 5-6.

To that end, the Administrator used all reasonable efforts to provide direct mail notice to potential Settlement Class Members. To start, the Administrator performed a reverse lookup process for those telephone numbers identified by Defendant to ascertain names and addresses of potential Settlement Class Members. Peters-Stasiewicz Dec., ¶ 3. The Administrator then sent

direct mail notice by postcard, with a detachable claim form, to potential Settlement Class Members, where possible. *Id.* at ¶ 5. A copy of these notice materials is attached as Exhibit A to the Peters-Stasiewicz Dec. Moreover, notice was effectively delivered to approximately 11,234 of the potential Settlement Class Members, with only 13% returned undeliverable, which courts routinely deem appropriate and sufficient for the purposes of Rule 23(e). *See, e.g.*, *Miller v. Travel Guard Grp., Inc.*, No. 21-cv-09751-TLT, 2024 U.S. Dist. LEXIS 238130, at *15 (N.D. Cal. Dec. 9, 2024) (approving notice campaign with delivery rate of 92%); *Belanger v. Allstate Fire*, No. 19-317 WJ/SCY, 2024 U.S. Dist. LEXIS 102539, at *11 (D.N.M. June 4, 2024) (approving notice campaign with delivery rates between 76% and 88%); *Stechert v. Travelers Home & Marine Ins. Co.*, No. 17-cv-0784-KSM, 2022 U.S. Dist. LEXIS 113277 (E.D. Pa. June 27, 2022) (finding that the notice effort met the requirements of due process and Rule 23 when there was an 89.84% delivery rate); *Ceccone v. Equifax Info. Servs. LLC*, No. 13-cv-1314 (KBJ), 2016 U.S. Dist. LEXIS 127942, at *19 (D.D.C. Aug. 29, 2016) (collecting cases finding that delivery rate around 87% was satisfactory); *accord Smith v. Res-Care, Inc.*, No. 3:13-5211, 2015 U.S. Dist. LEXIS 145266, at *12 (S.D. W. Va. Oct. 27, 2015) (finding a delivery rate of 92.13% to be "exceptional").

Separately, the Administrator established a dedicated Settlement Website, through which Settlement Class Members could review relevant documents, review the question-and-answer notice, and submit claims. Peters-Stasiewicz Dec., ¶ 9. In addition, the Administrator established a toll-free telephone number so that Settlement Class Members could ask questions or obtain additional information. *Id.* at ¶ 8.

As a result of this robust notice program, 333 Settlement Class Members submitted claims deemed to be valid. *Id.* at ¶ 14. Zero persons excluded themselves, and zero persons objected. *Id.* at ¶ 13. 523 claims were submitted by individuals who were not included in the relevant class data

and therefore invalid, and 78 claims were duplicates of other claims, and therefore those duplicate claims were also deemed invalid. *Id.* at ¶ 14.

The notice program, which is industry standard in TCPA class actions like this one, complies with Rule 23 and due process. *See Miles*, 2023 U.S. Dist. LEXIS 23103, at *4 (finding materially identical notice "satisfied the requirements of Fed. R. Civ. P. 23(c)(2)(B) and due process, and constituted the best notice practicable under the circumstances."); *Prater v. Medicredit, Inc.*, No. 4:14-cv-00159-ERW, 2015 U.S. Dist. LEXIS 167215, at *5 (E.D. Mo. Dec. 7, 2015) (same); *Bonoan v. Adobe, Inc.*, No. 3:19-cv-01068-RS, 2020 U.S. Dist. LEXIS 189558, at *5 (N.D. Cal. Oct. 9, 2020) (same).

Tied to this, the ultimate claims rate in this matter—2.6%—is typical for TCPA class settlements. *See, e.g.*, *id.* (granting final approval of $1 million TCPA settlement with approximately 12,000 potential class members and 254 claims, representing a claims rate of approximately 2.1%); *Miles*, 2023 U.S. Dist. LEXIS 23103, at *9 (granting final approval of TCPA settlement with claims rate of approximately 2.1%, tied to 6,400 claims from 303,600 potential class members); *Bayat v. Bank of the W.*, No. C-13-2376 EMC, 2015 U.S. Dist. LEXIS 50416, at *3 (N.D. Cal. Apr. 15, 2015) (approving TCPA settlement with a "claims rate for the monetary relief portion of the settlement of roughly 1.9%"); *Rose*, 2014 U.S. Dist. LEXIS 121641, at *13 ($20.00-$40.00 awarded to each class member based on a 3.2% claims rate was "in line with recoveries obtained in similar TCPA class action settlements"); *Grannan v. Alliant Law Grp., P.C.*, No. C10-02803 HRL, 2012 U.S. Dist. LEXIS 8101 (N.D. Cal. Jan. 24, 2012) ("[T]he relief to each class member will be in the range of $300-325, less than what the TCPA provides for a negligent violation, yet considerable when aggregated over the 1,986 opt-in class members" out of the 137,891 potential class members, or a 1.44% claim rate); *accord In re Wawa, Inc.*, 141 F.4th 456,

476 (3d Cir. 2025) (affirming settlement approval, and finding a claims rate of 2.56% to be "comparable to other low-harm data breach class action settlements") (collecting cases); *Keil*, 862 F.3d at 696-97 ("a claim rate as low as 3 percent is hardly unusual in consumer class actions and does not suggest unfairness").

### Conclusion

Plaintiff respectfully requests, with the agreement of Defendant, that this Court: (1) grant final approval of the Settlement as fair, reasonable, and adequate; (2) grant Plaintiff's prior request for attorney's fees, costs, and an incentive award as argued in ECF No. 34; and (3) enter the proposed Final Order and Judgment attached to this Motion as Exhibit B, and previously submitted at ECF No. 32-2 at 34-40.

Dated: January 14, 2026.     Respectfully submitted,

*/s/ Bryan A. Giribaldo*
Alex D. Kruzyk *(Attorney in Charge)*
Texas Bar No. 24117430
S.D. Tex. ID No. 3412403
Bryan A. Giribaldo
Texas Bar No. 24124547
S.D. Tex. ID No. 3657465
**PARDELL, KRUZYK & GIRIBALDO, PLLC**
7500 Rialto Blvd. Suite 1-250
Austin, Texas 78735
Tele: (561) 726-8444
Fax: (877) 453-8003
akruzyk@pkglegal.com
bgiribaldo@pkglegal.com

*Counsel for Plaintiff and the proposed Settlement Class*

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was served upon all parties of record by CM/ECF on January 14, 2026.

*/s/ Bryan A. Giribaldo*
Bryan A. Giribaldo